THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WALTER L. JACKSON, Defendant-Appellant.

First District (6th Division)   No. 1—90—1156

Opinion filed May 1, 1992.—Rehearing denied June 9, 1992.

Karoll & Raidbard, of Chicago (Marv Raidbard, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Michael Latz, and John E. Gilhooly, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a trial in which defendant Walter L. Jackson proceeded *pro se*, the jury found defendant guilty of the murder of his brother, Anthony Jackson. The court subsequently imposed a sentence of 49 years' imprisonment. On appeal, defendant contends that he did not knowingly and intelligently waive his right to counsel; that the State's failure to disclose a prosecution witness until the commencement of trial did not allow him adequate time to prepare his defense; that he was not proved guilty beyond a reasonable doubt; and that his constitutional rights were violated when he was not afforded a prompt preliminary hearing.

On September 4, 1988, defendant was arrested in Baton Rouge, Louisiana, under a fugitive from justice warrant which charged him with two counts of first-degree murder of the deceased. On November 30, 1988, defendant was extradited from Louisiana to Illinois. Thereafter, on December 29, 1988, the grand jury returned a true bill indicting defendant for first-degree murder in violation of section 9—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 9—1).

On May 17, 1989, defendant filed a *pro se* motion before Judge John Morrissey requesting representation by counsel other than the public defender. The judge denied defendant's motion, finding that he failed to state any grounds for the relief sought. On June 14 and 23, 1989, defendant repeated his request for other counsel, contending that he could not communicate with counsel from the public defender's office. Judge Morrissey denied these motions. On October 2, 1989, defendant again filed motions in which he sought appointment of other counsel, and a motion to dismiss Donna Foley, the public defender appointed to represent him. Both motions were denied.

On December 8, 1989, defendant filed a *pro se* motion for substitution of judge, which was heard before Judge Mary Maxwell Thomas. At that time, Foley filed a motion to withdraw and for appointment of other counsel, stating that defendant filed a complaint with the Attorney Registration and Disciplinary Commission (ARDC) alleging ineffective assistance of counsel. Because defendant's complaint extended to any attorney from the public defender's office, Foley requested that the public defender's office be allowed to withdraw to avoid any possible appearance of impropriety.

At the hearing before Judge Thomas, defendant requested that he be allowed to represent himself and proceed *pro se*. After admonishing defendant that he had to be prepared to represent himself in all ways, and that he would be held to the same standard as any practicing lawyer admitted to the bar, Judge Thomas allowed the public defender's office to withdraw and defendant to represent himself. Defendant's education consisted of a high school equivalency certificate. The court determined that defendant was mentally fit to stand trial and legally sane.

On December 11, 1989, another hearing was conducted before Judge Thomas, wherein the following colloquy occurred.

> "THE COURT: The charge is two counts of first degree murder and one count of unlawful use of a firearm by a felon.

THE DEFENDANT: Yes.

THE COURT: First degree murder charge *** would carry a penalty from 20 to 60 years. That would be the penalty. I don't know what your background is. If there were certain aggravating factors, it could carry a death penalty, that is a possibility. You understand that ***.

And you have, of course I know that you know this, but I'm just going to say it because I want to make sure that you understand that you are waiving your right to have an attorney in open court. That you have the right to have a lawyer, and if you are without funds to hire a lawyer to have counsel appointed by this court to represent you. What you have had in the past, is that correct?

THE DEFENDANT: Yes.

THE COURT: The Court admonished you extensively about your desire of waiving an attorney and to represent yourself, is that correct?

THE DEFENDANT: Yes.

THE COURT: And in light of all that and knowing the possible penalties, you are still electing at this time to represent yourself, is that correct?

THE DEFENDANT: Yes, your Honor."

On December 15, 1989, defendant again stated that he wanted to exercise his sixth amendment right to self-representation. Judge Thomas repeated her admonishment that defendant was running a very strong risk of jeopardizing his position by representing himself at trial. Judge Thomas denied defendant's motion for substitution of judge and referred the case back to Judge Morrissey.

On December 18, 1989, Judge Morrissey found that Judge Thomas had no authority to permit the public defender to withdraw from the case. Judge Morrissey asked defendant whether he wanted a lawyer; defendant refused the offer and indicated that he wanted to proceed *pro se*. Judge Morrissey questioned defendant as to whether he understood the nature of the charges against him, the minimum and maximum sentencing range, and that defendant had a right to appointed counsel. Defendant again stated that he wanted to exercise his right to self-representation. Judge Morrissey then allowed the public defender leave to withdraw from representing defendant.

On January 8, 1990, defendant appeared before Judge Morrissey, filed numerous *pro se* motions and demanded a jury trial. Trial was scheduled to start on February 5, 1990. However, on that

date defendant informed the court that he was not ready to proceed and that he wanted appointed counsel other than the public defender.

On February 6, 1990, defendant appeared before Judge John W. Crilly and again sought a substitution of judge. After Judge Crilly's inquiry about defendant's self-representation, the following dialogue transpired:

"THE COURT: You're acting as your attorney, are you?

[DEFENDANT]: Only because I was forced to, your Honor. I tried to get counsel other than the public defender. The public defender had withdrew from my case, asked leave. I don't know if that pertains to this motion here, but Judge Morrissey denied me that, so I'm forced to represent myself."

Judge Crilly denied defendant's motion for substitution of judge, finding no evidence of Judge Morrissey's bias against defendant. Defendant proceeded *pro se* at trial and was assisted by standby advisory counsel from the public defender's office who was appointed by Judge Morrissey.

The following testimony was adduced at trial. Jessie Kimble testified on behalf of the State that on August 30, 1988, at approximately 12:30 p.m., he was in the vicinity of 4020 West Maypole, Chicago. Kimble and two other persons were drinking beer in a vacant lot. Upon hearing a gunshot, Kimble turned around and saw defendant holding a pistol while standing near the driver's door of a car stopped on Maypole. Defendant's sister, Ella Jackson, was also standing near the car. Kimble watched the deceased running east on Maypole away from defendant. Defendant got into his car and drove away. Kimble found the deceased lying on the ground at the intersection of Maypole and Pulaski. Another brother, Melvin Jackson, was standing above the deceased. Under cross-examination, Kimble testified that he did not see anyone point the gun because his back was towards the action; however, he heard the gunshot come from the area where defendant was standing.

Dr. Margarita Arruza, who performed the autopsy on the deceased, testified that she found a bullet hole in the back of the victim, with no exit wound. Dr. Arruza opined that the deceased was killed by a gunshot wound through the back that involved the left lung and the heart.

Ella Jackson, sister of both the deceased and defendant, testified on behalf of the State that on the afternoon of the occurrence, she was walking across Maypole with the deceased when defendant

and Melvin drove up in a car. Defendant and Melvin both got out of the car and began a conversation with the deceased and Ella. An argument ensued between the deceased and defendant. Defendant retrieved a pistol from the car and hit the deceased on the forehead with the gun. The blow caused the deceased to fall to the ground. The deceased then arose and began running down the street away from defendant. Ella heard two shots ring out, which appeared to be fired by defendant. Under cross-examination, Ella testified that after she heard the shot, she assumed defendant fired at Anthony because they were arguing, but that she did not see the actual shooting.

Melvin Jackson testified on behalf of the State that defendant picked Melvin up on the morning of the occurrence and asked him to accompany him while he picked up some cocaine to sell. After picking up the cocaine, they returned to Maypole ·and approached Ella and the deceased.

Defendant and the deceased got into an argument over a gun. Defendant then went to the trunk of the car and removed a silver .22 gun with a short barrel and black handle. Defendant struck the deceased in the face with the gun. The deceased fell to the ground, jumped up, turned and ran away from defendant. Defendant ran behind the deceased and shot him in the back at a distance of 10 to 12 feet. The deceased reached for his back, but continued running down the street. Melvin saw the deceased fall to the ground and unsuccessfully attempted to help him.

Under cross-examination, Melvin stated that he did not tell the police the same story at first because he did not want his mother to know about his involvement with drugs. However, later that evening, defendant informed the police that defendant shot the deceased.

Detective David Dalponte of the Chicago police department testified for the State that he and a partner flew to Louisiana to extradite defendant. Dalponte also recovered a .22 caliber revolver found in defendant's possession at the time of the arrest.

Officer Richard Chenow testified on behalf of defendant as a ballistics expert. Chenow examined the .22 long rifle caliber bullet recovered from the deceased and the .22 long rifle caliber gun found in defendant's possession upon his arrest and found no matching individual characteristics. On cross-examination, Chenow stated that the evidence bullet removed from deceased bore the same class characteristics as test-fired bullets fired from the .22 long rifle caliber gun. Chenow further testified that the barrel of

the gun was so heavily leaded that it obscured the individual characteristics which may have been in the gun at the time it was fired.

On appeal, defendant first contends that he did not knowingly and intelligently intend to waive his right to counsel, but was forced to proceed *pro se* after withdrawal of the public defender's office.

According to Supreme Court Rule 401 (134 Ill. 2d R. 401(a)), a defendant can waive his right to counsel under the following circumstances:

"(a) Waiver of Counsel. Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court."

It is well established that whether there has been a waiver of the right to counsel is a matter to be determined by the trial court, and that decision will not be reversed absent an abuse of discretion. (*People v. Graves* (1984), 134 Ill. App. 3d 473, 480 N.E.2d 1142; *People v. Amft* (1982), 109 Ill. App. 3d 619, 440 N.E.2d 924.) A careful inquiry must be made to determine defendant's ability to conduct his own defense, focusing on his age, level of education, mental capacity, and prior experience with legal proceedings. *People v. Kavinsky* (1980), 91 Ill. App. 3d 784, 414 N.E.2d 1206.

■■ We reject defendant's argument that he did not knowingly and intelligently intend to waive his right to counsel. Review of the record indicates that both Judges Morrissey and Thomas queried defendant as to whether he understood the nature of the charges, the maximum and minimum penalties prescribed by law, and the right to appointed counsel if indigent. Both judges strongly discouraged defendant from embarking upon his own defense, yet defendant persisted in invoking his sixth amendment right to self-representation. Defendant, age 37, had earned a high school equivalency certificate and had been found mentally fit to stand trial. Defendant had several arrests prior to this offense and also filed numerous *pro*

*se* pretrial motions in this case; thus, it appears that defendant possessed sufficient familiarity with the judicial process to advance his defense. In addition, the trial judge also assigned an assistant public defender as advisory counsel to assist defendant throughout the trial.

We are also unpersuaded by defendant's trial-day request for other counsel because of the public defender's withdrawal. We first note that the public defender withdrew because defendant filed a complaint for ineffective assistance of counsel before the ARDC. More importantly, however, at the three hearings conducted before Judge Thomas, and during the two hearings before Judge Morrissey, defendant unequivocally indicated his desire to proceed *pro se* and agreed to begin trial on February 5, 1990. As such, we find defendant's trial-day request for other counsel little more than a dilatory tactic. The right to counsel of one's own choosing cannot be permitted to indefinitely thwart the administration of justice or otherwise impede the effective prosecution of crime. *People v. Little* (1990), 207 Ill. App. 3d 720, 566 N.E.2d 365.

We also note parenthetically that it was well within the discretion of the trial court to deny defendant's request for counsel other than the public defender. Although defendant has an unqualified right to assistance of counsel, he does not have an unqualified right to choose his court-appointed attorney. (*People v. Morrissette* (1986), 150 Ill. App. 3d 431, 501 N.E.2d 781; *People v. Johnson* (1982), 109 Ill. App. 3d 511, 440 N.E.2d 992.) Absent a showing of good cause, it is within the court's discretion to deny such a request. (*People v. Dorsey* (1982), 109 Ill. App. 3d 218, 440 N.E.2d 394.) In this case, defendant failed to show good cause for appointing an attorney other than the public defender.

■ Defendant next contends that he was not informed of the State's intention to call Jessie Kimble to testify; thus, he was denied a fair trial because he did not have an opportunity to interview this witness. However, the record indicates that in the State's response to defendant's pretrial discovery filed on April 4, 1989, the name of Jessie Kimble was included among the list of persons who might be called to testify at trial. Assuming *arguendo* that defendant did not have the opportunity to review the State's list of witnesses, his failure to object to the testimony of Kimble at trial on the basis of nondisclosure constitutes a waiver of this issue on appeal. *People v. Zarebski* (1989), 186 Ill. App. 3d 285, 542 N.E.2d 445.

Defendant further asserts that he was not proved guilty beyond a reasonable doubt. Specifically, defendant states that the testimony of Ella and Melvin Jackson was insufficient to prove that he shot his brother.

It is well established that the standard of review for challenging a criminal conviction based upon reasonable doubt is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) Our supreme court has held that a criminal conviction will not be reversed "unless the evidence is so unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *People v. Young* (1989), 128 Ill. 2d 1, 51, 538 N.E.2d 453, 461; see also *People v. Hooper* (1989), 133 Ill. 2d 469, 552 N.E.2d 684.

■ We conclude that defendant was proved guilty beyond a reasonable doubt. Melvin and Ella Jackson, defendant's brother and sister, testified that on the afternoon of the offense, defendant and the deceased became embroiled in an argument. Further testimony indicated that defendant shot the deceased in the back as he ran away from defendant. The testimony of Jessie Kimble, a disinterested witness, corroborates the testimony of Melvin and Ella Jackson. A reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.

Defendant's final argument posits that his constitutional rights were violated because he was not afforded a prompt preliminary hearing establishing probable cause that he committed the crime for which he was arrested.

Defendant was taken into custody on September 4, 1988, in Louisiana. He was extradited from Louisiana to Illinois on November 30, 1988, and was indicted by the grand jury on December 29, 1988.

Section 109—3.1(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 109—3.1(b)) provides in relevant part:

> "(b) Every person in custody *in this State* for the alleged commission of a felony shall receive either a preliminary examination as provided in Section 109—3 or an indictment by Grand Jury as provided in Section 111—2, *within 30 days*

*from the date he or she was taken into custody.*" (Emphasis added.)

██ In *People v. Perez* (1981), 100 Ill. App. 3d 901, 427 N.E.2d 229, this court held that the 120-day period within which the State is required to bring defendant's case to trial does not commence on the date defendant was taken into custody; rather, it begins on the date when defendant was extradited to Illinois. (See also *People v. Hayes* (1962), 23 Ill. 2d 527, 179 N.E.2d 660; *People v. Gilliand* (1971), 131 Ill. App. 2d 635, 267 N.E.2d 140.) We find that the grand jury indictment of December 29, 1988, following defendant's return to Illinois on November 30, 1988, demonstrates sufficient compliance with this well-established rule.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN, P.J., and RAKOWSKI, J., concur.