THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM JOHNSON, Defendant-Appellant.

Fourth District    No. 4—93—0558

Argued February 16, 1994.—Opinion filed June 7, 1994.

Sheldon L. Banks (argued), of Chicago, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten,

Robert J. Biderman, and Linda Susan McClain (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In March 1993, a jury convicted defendant, William Johnson, of five counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1)), and two counts of home invasion (Ill. Rev. Stat. 1989, ch. 38, par. 12—11). The trial court later vacated the second home invasion conviction as duplicitous and sentenced defendant to consecutive prison terms of 30 years on one count and 10 years on each of the other four counts of aggravated criminal sexual assault, and a consecutive 20-year term for the home invasion count. Defendant appeals, arguing that the court (1) erroneously admitted DNA testimony linking defendant to these crimes, (2) improperly permitted the State to elicit testimony that defendant staked out the victim's home, and (3) abused its discretion by imposing an excessive sentence.

We affirm.

## I. BACKGROUND

Prior to trial, defendant made several motions *in limine*, including motions to preclude (1) Harold Deadman's expert testimony about DNA (deoxyribonucleic acid) identification, and (2) Maurice Witherspoon's testimony about prior crimes, wrongs, or acts committed with defendant. Regarding defendant's motion *in limine* concerning Deadman's expert testimony, the trial court reserved ruling on the admissibility of the DNA evidence to allow defendant an opportunity to submit authority on the issue. Defendant neither objected to this procedure nor requested a pretrial ruling. The trial court subsequently took judicial notice of this court's decision that DNA identification evidence is admissible because it is recognized by the relevant scientific communities. See *People v. Lipscomb* (1991), 215 Ill. App. 3d 413, 432, 574 N.E.2d 1345, 1357.

Defendant's motion concerning Witherspoon sought to preclude his testimony that he acted as a lookout while defendant looked in the windows of the victim's home. In response, the State informed the trial court that it would not ask Witherspoon to testify about crimes committed with defendant, but would only inquire about defendant's presence at the victim's house and his looking in the windows. The court then denied defendant's motion.

At trial, the victim, a 12-year-old girl, testified that on December 10, 1990, she was awakened during the night by someone putting an object which felt like a gun to her head. The person covered her face

with a pillow and proceeded to commit five separate acts of sexual assault upon her. After ejaculating on her leg, the assailant used a stuffed animal to wipe her leg off. Even though she was not able to see the assailant's face, she could see that he was a black man.

Her younger brother was sleeping in her room that night. He was also awakened by someone placing what felt like a gun to his head. He also did not see the assailant because a sheet covered his head during the entire incident. His testimony closely paralleled his sister's. After the assailant fled, the children lay in bed for some time and then told their mother what had happened. The victim was taken to an emergency room, where the medical staff followed standard procedures for a rape case in order to preserve evidence.

A police officer who investigated the scene testified that no latent fingerprints matching defendant's were found at the scene. Further, some hairs found at the scene did not match either the victim or defendant. However, a serology expert testified that defendant's blood type was consistent with the semen stains left on the stuffed animal and the victim's underwear.

Witherspoon testified that he received a reduced charge in exchange for his testimony against defendant. Witherspoon knew defendant because Witherspoon's brother used to be married to defendant's sister. Witherspoon testified that he and defendant had been at the victim's house in the fall of 1990 to "check it out." He explained that he helped defendant move outdoor furniture closer to the house and then stood lookout while defendant looked in the windows. Both the victim and the victim's mother testified that someone had moved their outdoor furniture during the fall of 1990, and they did not know who. An officer testified that Witherspoon had pointed out the victim's house while they drove by it in February 1991.

Defendant denied ever having been present at the victim's home and denied the acts of sexual assault. Defendant also testified that he did not consider Witherspoon a friend. Two friends of defendant testified that they believed defendant was with them at their home on December 10, 1990; they claimed they would have heard him if he had left the house.

After the trial court took judicial notice of the admissibility of DNA identification evidence, the State offered Deadman, a Federal Bureau of Investigation (FBI) agent, to testify about DNA identification. After Deadman testified about his qualifications, the court found him qualified to testify as an expert on DNA identification. Deadman then explained in detail the FBI procedures used in DNA identification. The trial court ruled that the FBI procedures were not so

unreliable as to preclude the DNA identification evidence, and Deadman testified that in his opinion, the seminal material from the victim's underwear and the stuffed animal matched samples of bodily fluids taken from defendant. Deadman testified further that the probability of selecting another person from the black population who is unrelated to defendant and who would have the same DNA profile as defendant is 1 in 100 million.

## II. DNA IDENTIFICATION TESTIMONY

■ Defendant contends that the trial court erred in admitting the DNA testimony. Citing *Lipscomb* for the proposition that the trial court's determination of whether to allow DNA identification evidence must be made prior to trial, defendant first argues the trial court erred by failing to conduct such a hearing. However, although the trial court in *Lipscomb* did issue a pretrial ruling based on a *Frye* hearing (see *Frye v. United States* (D.C. Cir. 1923), 293 F. 1013), the *Lipscomb* court did not hold that such a hearing must be held in each case.

In *People v. Mehlberg* (1993), 249 Ill. App. 3d 499, 618 N.E.2d 1168, the defendant argued that the trial court erred by failing to hold a *Frye* hearing regarding the admissibility of DNA identification testimony. The appellate court disagreed and held that the trial court appropriately relied on precedential case law to determine DNA testimony was admissible without holding a *Frye* hearing. *Mehlberg*, 249 Ill. App. 3d at 532-38, 618 N.E.2d at 1190-94; see also *People v. Thomas* (1990), 137 Ill. 2d 500, 518, 561 N.E.2d 57, 63 (trial court did not err by failing to hold a *Frye* hearing on admissibility of electrophoresis testimony after taking judicial notice of electrophoresis as an accepted scientific procedure based on the prior decision in *People v. Partee* (1987), 157 Ill. App. 3d 231, 511 N.E.2d 1165, that such testimony was admissible).

In this case, we hold that the trial court also appropriately relied on precedential case law to determine that the proffered DNA testimony was admissible. The trial court correctly took judicial notice of DNA identification as an accepted scientific procedure based on this court's prior rulings in *Lipscomb* (215 Ill. App. 3d at 432, 574 N.E.2d at 1357), and *People v. Miles* (1991), 217 Ill. App. 3d 393, 404-05, 577 N.E.2d 477, 484-85. (See also *People v. Stanley* (1993), 246 Ill. App. 3d 393, 400-01, 615 N.E.2d 1352, 1358 (citing *Miles* for the proposition that DNA probability statistics testimony has been accepted in this jurisdiction).) Thus, no need existed for the court to conduct a *Frye* hearing prior to making its decision on the admissibility of this evidence. Further, we note that the trial court did make independent

findings regarding Deadman's qualifications as an expert in DNA identification, as well as the reliability of the specific procedures the FBI used.

■ Next, defendant argues that the trial court erred in admitting the DNA identification testimony. In *Lipscomb*, this court determined that DNA identification testimony is admissible, stating:

> "[T]he DNA identification or fingerprinting procedure *** is generally accepted within the particular scientific fields involved and is admissible. This includes the six-step RFLP procedure used in developing the autorads, the visual interpretation of these autorads, the manner of determining the bins, the development of frequencies, and procedure whereby the individual frequencies are multiplied together to determine the ultimate frequency of the pattern.
>
> Any question concerning the specific procedures used by the company or expert goes to the reliability of the evidence and is properly considered by the jury in determining what weight to give to this evidence. If it is shown that the procedures used give an unreliable result, then the court may find it necessary to exclude this evidence entirely." (*Lipscomb*, 215 Ill. App. 3d at 432, 574 N.E.2d at 1357.)

In *Miles*, this court reaffirmed its decision in *Lipscomb*, stating that DNA identification testimony is admissible, including statistical probability testimony. *Miles*, 217 Ill. App. 3d at 404-05, 577 N.E.2d at 484-85.

Defendant does not argue that the specific procedures used in this case were unreliable, but instead simply contends that DNA identification testimony in general should not be allowed. The only case defendant cites in support of this position is a first district case in which the appellate court found that the trial court had not abused its discretion by precluding a codefendant's DNA tests. (*People v. Wardell* (1992), 230 Ill. App. 3d 1093, 1101, 595 N.E.2d 1148, 1153-54.) However, the court in *Wardell* based its decision on the fact that at the time the codefendant made his request (and when the trial court ruled on it), DNA testing had been available in the United States for only five months and no Illinois court had yet allowed such evidence. (*Wardell*, 230 Ill. App. 3d at 1101, 595 N.E.2d at 1153-54.) The *Wardell* court noted that DNA testing has since been allowed by some Illinois courts, citing *Lipscomb* and *Miles. Wardell*, 230 Ill. App. 3d at 1100, 595 N.E.2d at 1153.

In holding that the trial court properly allowed the DNA identification testimony in this case, we are aware of the recent decision of the First District Appellate Court in *People v. Watson* (1994), 257 Ill. App. 3d 915, 928, 629 N.E.2d 634, 643, questioning the bases

of the holdings in *Lipscomb*, *Miles*, and *Mehlberg* in part because in those cases "there was a complete absence of opposing scientific perspectives challenging the DNA evidence, a factor which, at least in part, led the courts to conclude that the matching procedures were generally accepted." We note that in *Lipscomb*, the trial court conducted an exhaustive, lengthy pretrial hearing on DNA identification testimony at which the State's proffered evidence was vigorously and thoroughly challenged. With all due respect to the reservations expressed by the *Watson* court, we stand by and reaffirm our holdings in *Lipscomb* and *Miles*. In reaffirming our holdings in those cases, we have considered the recent decision of the Second District Appellate Court in *People v. Stremmel* (1994), 258 Ill. App. 3d 93, 105-07, where the appellate court reviewed the extensive pretrial hearings the trial court conducted on the admissibility of the DNA evidence, consisting of the testimony of six experts (four for the State and two for the defendant), and, after citing approvingly our holding in *Lipscomb*, ruled that the trial court properly admitted that evidence.

Defendant makes no argument that the particular DNA identification procedures used in this case were unreliable. Consequently, we reject defendant's argument that the trial court erred by allowing the DNA identification testimony.

### III. WITHERSPOON'S TESTIMONY

■ Defendant next argues that the trial court erred by allowing Witherspoon's testimony that he acted as a lookout on several occasions while defendant looked in the windows of the victim's house before the day when she was sexually assaulted. Defendant argues that the trial court erred in admitting this evidence because of its highly prejudicial nature. The State maintains that the court properly admitted this evidence for the purpose of showing defendant's identification, purpose, and plan.

Evidence of a defendant's commission of other crimes or wrongs is generally inadmissible so that the trier of fact will not draw the inference that because the defendant committed one crime, he probably committed others. (See *People v. Lampkin* (1983), 98 Ill. 2d 418, 428-30, 457 N.E.2d 50, 55-56.) However, evidence of other crimes, wrongs, or acts committed by a defendant is admissible to prove *modus operandi*, intent, identity, motive, absence of mistake, or any other relevant purpose other than to show a defendant's propensity to commit crimes. (*People v. Coleman* (1994), 158 Ill. 2d 319, 333; *People v. Stewart* (1984), 105 Ill. 2d 22, 61-62, 473 N.E.2d 840, 859-60.) When such evidence is offered, the trial court must weigh its relevance against its prejudicial effect; unfairly prejudicial evidence

should not be admitted. (*Stewart*, 105 Ill. 2d at 62-63, 473 N.E.2d at 860.) The admission of such evidence lies within the sound discretion of the trial court, and this court will not reverse on review absent a showing of abuse of discretion. *People v. Maxwell* (1992), 148 Ill. 2d 116, 130, 592 N.E.2d 960, 967; *People v. Harper* (1993), 251 Ill. App. 3d 801, 804, 623 N.E.2d 775, 777.

The testimony of Witherspoon was not offered for the purpose of showing defendant's general propensity to commit crime, but rather to prove his identity, plan, and preparation. A central issue in this case was the assailant's identity, given the victim's inability to see the assailant's face during the assault. Witherspoon's testimony clearly linked defendant to these crimes and bolstered the identification testimony offered by the State. The trial court specifically found that this testimony had substantial probative value, and we agree. Further, the fact that this testimony was so compelling in no way makes it unfairly prejudicial. Last, we note that the trial court appropriately gave a limiting instruction to the jury, explaining that this evidence should be considered only for purposes of identity, plan, and preparation. We hold that the trial court did not err in allowing Witherspoon's testimony. See *Maxwell*, 148 Ill. 2d at 131-32, 592 N.E.2d at 967-68.

## IV. SENTENCING

■ Defendant further argues that the trial court abused its discretion in sentencing him. As stated earlier, the trial court sentenced defendant to consecutive prison terms of 30 years on one count of aggravated criminal sexual assault, 10 years on the other four counts of that offense, and a 20-year consecutive sentence on the home invasion count. Essentially, defendant's sentence amounts to 90 years in prison. Defendant argues that such a protracted sentence is error because it does not serve any rehabilitative purpose.

As the only authority for his position, defendant cites a statutory provision and cases stating that sentencing should reflect both the seriousness of the crime and the rehabilitative potential of the defendant. (See Ill. Rev. Stat. 1989, ch. 38, par. 1001—1—2(a); *People v. Carlson* (1980), 79 Ill. 2d 564, 587-91, 404 N.E.2d 233, 244-45; *People v. Williams* (1978), 62 Ill. App. 3d 966, 975-76, 379 N.E.2d 1268, 1276.) Although defendant is a young man (27 years old at the time of sentencing), little supports his claim of rehabilitative potential. He has held several jobs, but none for any length of time. In addition, defendant has continuously been in trouble with the law, including having several felony convictions.

The trial court's sentence is a matter involving considerable

judicial discretion and should not be reversed on review unless that discretion has been abused. (*People v. Streit* (1991), 142 Ill. 2d 13, 18-19, 566 N.E.2d 1351, 1353; *People v. Nussbaum* (1993), 251 Ill. App. 3d 779, 780-81, 623 N.E.2d 755, 757.) In addition, consecutive sentences are mandatory for those offenses occurring as part of the same course of conduct committed by offenders convicted of aggravated criminal sexual assault. Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4; *People v. Bole* (1993), 155 Ill. 2d 188, 195-96, 613 N.E.2d 740, 743-44; *Miles*, 217 Ill. App. 3d at 409-10, 577 N.E.2d at 488; *Lipscomb*, 215 Ill. App. 3d at 439, 574 N.E.2d at 1361-62.

The nonextended sentencing range for each count of aggravated criminal sexual assault and for home invasion, both Class X felonies (see Ill. Rev. Stat. 1989, ch. 38, pars. 12—14(d), 12—11(c)), is not less than six nor more than 30 years of imprisonment. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(3).) At defendant's sentencing hearing, the State also argued that defendant was eligible for extended-term sentencing (30 to 60 years of imprisonment (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—2(a)(2))); however, the trial court did not sentence him to extended terms. In fact, the trial court did not even impose the maximum nonextended sentence possible by statute, though it did impose consecutive sentences. In addition, the trial court specifically stated that it reviewed all of those factors which might mitigate the sentence and all of those factors which the court must consider as aggravating factors.

The crimes defendant committed in this case are shockingly heinous—the premeditated, repeated sexual assault of a young girl in her own bed by a stranger who stealthily entered the victim's home at night as she slept. By imposing what amounts to a 90-year sentence, the trial court apparently concluded that the enormity of defendant's crimes requires that he never be released from prison—or at least not released until he is too old to present a danger to society any longer. We agree.

People who commit crimes like this forfeit their right to walk among us as members of a free society. The courts must do all they can to ensure that these terrible crimes—and the suffering they caused this innocent victim (perhaps for the rest of her life)—never again be visited upon some other innocent victim. By putting this vicious criminal behind bars for this lengthy period, the trial court fulfilled its obligation to protect society, and we affirm the trial court's sentence.

## V. CONCLUSION

For the reasons stated, we affirm defendant's convictions of

aggravated criminal sexual assault and home invasion and the sentences imposed.

Affirmed.

KNECHT and COOK, JJ., concur.