THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEVIN CHILDS, Defendant-Appellant.

Fourth District   No. 4—93—1128

Argued August 22, 1995.—Opinion filed February 29, 1996.

Daniel D. Yuhas and Martin J. Ryan (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen (argued), all of State's Attorneys Appellate Prosecutor's Office, of Springfield, of counsel), for the People.

JUSTICE GARMAN delivered the opinion of the court:

Following a jury trial in the circuit court of McLean County, defendant Kevin Childs was convicted of residential burglary (720 ILCS 5/19—3 (West 1992)), aggravated unlawful restraint (720 ILCS 5/10—3.1 (West 1992)), two counts of aggravated criminal sexual assault (720 ILCS 5/12—14 (West 1992)), violation of order of protection (720 ILCS 5/12—30 (West 1992)), and aggravated kidnaping (720 ILCS 5/10—2(a)(3) (West 1992)). He was sentenced to terms of imprisonment totaling 37 years. He now appeals, claiming (1) he should not have been convicted of both aggravated criminal sexual assault and aggravated kidnaping because, as charged in the indictment, the former offense was an included offense of the latter; (2) the trial court failed to adequately inquire into his allegations of ineffective assistance of counsel and failed to obtain a valid waiver of his right to counsel; (3) the evidence was insufficient to convict him of the various offenses; (4) his sentence of 30 years' imprisonment for aggravated kidnaping was in error, as the maximum sentence for this offense is 15 years' imprisonment; and (5) the trial court erred in sentencing him to consecutive terms. Because we conclude that there was no valid waiver of counsel, we must reverse and remand. We discuss some of the other issues merely to aid the court and counsel on remand.

## I. PROCEEDINGS IN THE TRIAL COURT

In the indictment, one count of aggravated criminal sexual assault charged defendant with committing an act of forcible sexual penetration (defendant's penis and the victim's vagina) by use of a knife. The second count of aggravated criminal sexual assault made the same allegations, except that the act of penetration involved the victim's mouth and defendant's penis. The charge of aggravated kidnaping alleged that defendant had carried the victim from one place to another with intent secretly to confine her against her will and committed the felony of aggravated criminal sexual assault on her.

Assistant Public Defender Amy Davis was appointed to represent defendant. At a hearing in April 1993, for appointment of expert wit-

ness, defendant told the court he wanted Davis dismissed as his attorney. He accused her of not investigating his witnesses, not working with him, and being unfamiliar with his case. The court denied defendant's request.

Davis filed a motion to withdraw as counsel in June 1993, alleging that defendant was objecting to certain actions she had taken on his behalf. When she attempted to see defendant at the county jail, she was informed that he would not see her and he would represent himself. Davis requested leave to withdraw, as it had become impossible for her to communicate with defendant. At the hearing on the motion, defendant complained that Davis had discussed his case with other inmates and that she was not spending time on his case or telling him anything that was happening. The trial court allowed the motion.

Assistant Public Defender Richard Koritz was appointed to represent defendant. At the pretrial hearing, Koritz indicated to the court that defendant had expressed a desire to have counsel from outside the public defender's office appointed. Defendant indicated his objection was that Koritz works in the same office as Davis. The court denied the motion.

On September 22, 1993, the day the jury trial was to begin and prior to selecting the jury, Koritz advised the court that defendant had filed a request with the Attorney Registration and Disciplinary Commission (ARDC) to investigate him. Koritz advised the court that he had just been given a copy of the complaint earlier that morning. He indicated the atmosphere between defendant and himself had been "poisoned" by the filing of this complaint, and he made an oral motion to withdraw personally from defendant's case. The ARDC complaint alleged that (1) Koritz had advised defendant to plead guilty to residential burglary but had earlier told him that, technically, the charge was not residential burglary and Koritz failed to explain this; (2) Koritz refused to file a motion to suppress a tape recording of a conversation between defendant and C.G., the victim; (3) Koritz refused to obtain telephone records of calls placed from C.G.'s home which defendant claimed would have exonerated him on the residential burglary charge; (4) Koritz failed to talk with defendant's nephew, whom he and C.G. visited during the alleged kidnaping, and to anyone at a gas station where they also stopped; and (5) Koritz had failed to obtain C.G.'s hospital records and motel records of a room rented by C.G.

When the trial judge asked defendant what he wanted him to do, defendant asked that competent representation be appointed. The judge indicated that both attorneys who had been appointed to repre-

sent defendant were very competent and that he was not going to appoint any other attorneys. The judge gave defendant a choice of going to trial without having an attorney, going to trial with Koritz as his attorney, or hiring his own counsel within the next hour. Defendant complained that Koritz had not talked with any of his other witnesses. Defendant indicated he could not afford an attorney and stated he would not choose any of the three offered options. He attempted to persuade the trial court to make his decision for him, stating it was the decision of the court. Finally, defendant stated he did not want Koritz to represent him and that he was prepared to accept the "consequences" of going to trial without an attorney. The trial court then allowed Koritz' motion to withdraw. Defendant stated he had not said he was willing to represent himself, and he admitted he did not know how to pick a jury or make an opening statement. He simply said he did not want Koritz to represent him. When asked how defendant would try his case without an attorney, he stated that he felt it was the court's responsibility to give him proper representation.

The trial judge stated he had seen defendant's ARDC complaint, and he commented:

"I see the stuff you are complaining about and I can tell you for a fact the things you are complaining about, the one I can tell about here you don't have anything here. There is no basis for a Motion to Suppress on what you say here because she recorded the statement, or you recorded the statement, either one, there is no basis for a Motion to Suppress. Suppression applies to government recording statements; not some private person. So see, you don't know what you are talking about here."

The judge also said:

"I wouldn't have got rid of him [(Koritz)] before when you wanted to so, you think I am not going to so, you are going to get rid of him yourself by firing him in Court."

When the trial judge asked if both parties were ready for the jury to be brought in, the following exchange occurred between the judge and defendant:

"THE COURT: Okay. Are you ready for the jurors to be brought up, both sides?

[Prosecutor]: The State is ready, your Honor.

THE DEFENDANT: I have no questions for the jury. I don't plan to represent myself. If you want this trial to go on, we will let it go on. You can let it go on as is. I know I am not an attorney. You know I am not an attorney so, you can let it go on as is.

THE COURT: You don't you don't [sic] plan on representing yourself?

THE DEFENDANT: I don't feel I have the qualifications to represent myself.

THE COURT: Well, it was your choice. You're saying it is my choice. The record is clear. The Appellate Court will decide."

Following jury selection and opening statements, the trial court offered to have Koritz represent defendant for the balance of the trial. After arguing with the judge for some time, defendant declined.

At trial, C.G. testified that prior to November 15, 1992, defendant resided with her for periods of time at her home. On that date, she received a temporary order of protection against defendant. The plenary order was entered on December 4, 1992. In that order, defendant was ordered to vacate C.G.'s residence and was prohibited from entering or remaining in the residence. On December 21, 1992, she had been out to dinner with some friends and returned home about 8 p.m. When she entered the back porch door, she noticed chips of wood, as if the door had been tampered with. She started to run off the porch when defendant came up behind her from inside the house and pulled her inside. He threw her up against the refrigerator and made threatening statements about killing her. There was a large knife on the kitchen table.

Defendant took her into the living room and continued to threaten to kill her. Her tape recorder that she uses in connection with her job was there and defendant turned it on, saying he wanted to remember what she sounded like when she begged. Defendant told her to take off her clothes so she could not run away. When she realized the next day that her conversation with defendant was on the tape, she took it to the police. The tape was played for the jury.

C.G. testified that defendant's mother called two times during the evening and left messages, wanting to know if C.G. was okay. Defendant called his mother back and had C.G. call her to tell her everything was okay. She tried to convince his mother that she was okay, but the mother indicated she was not convinced and she was going to call the police. Defendant also made another call from her telephone. Defendant's brother came to the door and told defendant the police were coming and that he should leave. Defendant then told C.G. to put her clothes on, that they were leaving. She did what he told her to because she was afraid; she knew from past incidents that he was faster than she was. She never felt free to leave by herself. Defendant took the knife from the kitchen. They took her car, and defendant drove to the house of a friend she did not know. They also stopped at a gas station and defendant purchased some beer and juice. He made her go in with him; she did not say anything to anyone at the store because she was frightened. Defendant still had the

knife. Then they went to a motel, where he told her to use one of her credit cards to pay for a room. Defendant asked the clerk for a room at the back of the motel. After they entered the room, he again forced her to take off her clothes so she could not run away. Defendant placed the knife on a table in the room. He was drinking the beer and making threatening remarks. He told her if she could have sex with any man, she could have sex with him. She told him she would do whatever he wanted her to do because she was afraid he was going to kill her. She submitted to vaginal sex. In addition, she had oral sex with defendant which involved her mouth to defendant's penis and his mouth to her vagina. They arrived at the motel between 11:30 p.m. and 12 a.m., and defendant allowed her to leave about 4 a.m. When she arrived home, she called the police.

On cross-examination by defendant, C.G. testified that a photograph of the motel room showed a beer can with a hole and burn marks, which was used by defendant to smoke cocaine. On examination by the court, C.G. testified the knife defendant had in her kitchen and in the motel room was not hers—she had never seen it prior to that night.

Officer Randy McKinley of the Bloomington police department testified that he is a crime scene investigator. He observed that the back door to C.G.'s residence appeared to have been forced open from the outside. In the motel room, he found what appeared to be a steak knife lying on the floor near one of the beds. Defendant asked no questions of the witness.

Violet Singleton, defendant's mother, testified on behalf of the State that she called C.G. because she knew defendant was there; she told him to leave. When she spoke with C.G., she sounded nervous, as if she was upset. C.G. called her later that night, laughing and saying everything was okay. Defendant asked no questions of his mother.

Officer Mark Provenzano of the Bloomington police department testified that he participated in the arrest of defendant at the motel. When he arrived at the motel room, he noticed a large hunting knife on the floor between the two beds. Also on the floor was a bandanna that had been tied into the shape of a mask, folded in half, and tied in a knot in the back. Defendant asked no questions of Provenzano.

Officer Michael Ripsch of the Bloomington police department testified that he saw the hunting knife on the floor and, in addition, he removed a kitchen knife from defendant's clothing when he arrested him. Defendant asked no questions of Ripsch.

After the State rested its case, defendant moved for a mistrial because of his lack of legal counsel. That motion was denied.

Defendant called Nancy Johnson as a witness. She was working

at the motel the night defendant and C.G. came in for a room. C.G. and defendant discussed the matter of payment for the room in a joking manner. There seemed to be no anger. Defendant was standing away from the desk, back toward the entrance. C.G. used a credit card to pay for the room.

Stacey Walworth, general manager of the motel, testified that she was at the motel when defendant and C.G. came in to register. She was about to leave and recalled that defendant and C.G. joked about what credit card to use for payment. This was about 10 p.m. C.G. did not appear to be afraid. Two days later, C.G. called her and said she had been raped in the motel and asked that her credit card not be charged.

After the jury began its deliberations and out of defendant's presence, the trial court allowed Koritz to make a record concerning his response to defendant's allegations of ineffectiveness. He said he requested that defendant contact him and advise what witnesses he wished Koritz to talk with, which defendant did not do. Koritz attempted to contact defendant and was told by his mother that defendant was out of town and that she would relay the message. In Koritz' opinion, the critical witnesses were Johnson and Walworth. Defendant did not give him the address of the house where he and C.G. stopped on the way to the motel. Koritz did not contact anyone at the gas station because there would have been a number of people coming and going and, since nothing happened there with defendant and C.G., he could just argue to the jury that two stops were made and everything was normal. He also contacted two crime labs for cocaine testing of physical samples given by C.G. and was told that it was too late to test for cocaine because it would have deteriorated. Defendant would not discuss the tape recording with him after defendant had listened to it.

At the sentencing hearing on November 23, 1993, defendant appeared *pro se* and made an oral motion for a new trial, which was denied. The presentence report shows defendant had an extensive juvenile history. In 1975, as an adult, he was convicted of armed robbery and sentenced to four to eight years' imprisonment. In 1979, he had a misdemeanor charge. In 1989, defendant was convicted in California of battery with serious bodily injury and assault by means likely to produce great bodily harm. He was sentenced to four years' probation and one year in jail. He was on probation at the time the offenses in this case were committed. In 1991, he was convicted of driving under the influence of alcohol and given 18 months' court supervision. Defendant reported the regular use of alcohol and use of cocaine, cannabis, "acid," and "speed."

No evidence was presented at the sentencing hearing. The prosecutor recommended eight-year sentences, to be served consecutively, for count I (residential burglary), count III, count IV (aggravated criminal sexual assault), and count VI (aggravated kidnaping); and a one-year sentence on count V (violation of order of protection), pursuant to section 5—8—4(a) of the Unified Code of Corrections (Code) (730 ILCS 5/5—8—4(a) (West 1992)). Defendant indicated he disagreed with the "sentence total" because he did not have legal counsel. The trial court expressed uncertainty as to whether section 5—8—4(a) of the Code requires consecutive sentences only for the aggravated criminal sexual assault convictions or for all convictions arising from that incident. It also noted it is sometimes difficult to determine what constitutes a single course of conduct. The court imposed sentences of 5 years for the residential burglary conviction, 2 years for the aggravated unlawful restraint conviction, and 15 years each on the two counts of aggravated criminal sexual assault, all to be served consecutively. The court imposed a concurrent term of 30 years on the aggravated kidnaping conviction. No sentence was imposed on the conviction for violation of the protective order. Defendant filed no post-trial motion.

The material in sections II and III is not to be published pursuant to Supreme Court Rule 23. 166 Ill. 2d R. 23.

## IV. WAIVER OF COUNSEL

■ Defendant next argues that the trial court failed to substantially comply with Supreme Court Rule 401(a) (134 Ill. 2d R. 401(a)) when it failed to admonish him of the nature of the charges and the range of penalties to which he was subject. He also argues he did not make a knowing and intelligent waiver of counsel. Rule 401(a) provides that prior to allowing a defendant to waive counsel, the trial court must inform the defendant of (1) the nature of the charge; (2) the minimum and maximum sentences prescribed by law, including the possibility of consecutive sentences, if applicable; and (3) the right to counsel and, if indigent, to have counsel appointed.

Only substantial compliance with the rule is required to effectuate a valid waiver of counsel, if the record indicates waiver was made knowingly and intelligently. (See *People v. Langley* (1992), 226 Ill. App. 3d 742, 749, 589 N.E.2d 824, 829; *People v. Coleman* (1989), 129 Ill. 2d 321, 333, 544 N.E.2d 330, 336.) Waiver may not be found if there was no substantial compliance, as there can be no effective waiver of counsel without the proper admonitions. *Langley*, 226 Ill. App. 3d at 749, 589 N.E.2d at 829.

Defendant urges us to reach this issue on the basis of plain error, as he failed to file any post-trial motion. Because the right to counsel is a fundamental right, we find that plain error review is warranted.

■ There can be no question in this case that the trial court failed to substantially comply with the rule. Therefore, no waiver can be found. The State argues that defendant was familiar with the nature of the charged offenses and the possible penalties involved. However, the record does not support this contention. Although defendant knew he was charged with Class X offenses, there is no indication he knew what the penalties were or that he was subject to consecutive sentences. The only admonition given defendant by the trial court was that he was entitled to appointed counsel. This is not substantial compliance.

There are cases which hold that a defendant is not entitled to appointed counsel of his choice and that a defendant may not use his right to counsel to thwart the timely administration of justice. (See *People v. West* (1990), 137 Ill. 2d 558, 588, 560 N.E.2d 594, 608; *People v. Jackson* (1992), 228 Ill. App. 3d 868, 875, 593 N.E.2d 760, 765.) We wholeheartedly agree with this proposition. In addition, the record here supports the inference that defendant was purposely being difficult on the issue of counsel. We wish to make it clear that defendants may not require trial courts to play these games. The trial court could have made an initial determination whether there was any valid basis to discharge counsel. Since none was shown, the court could have denied the motion to withdraw and proceeded with trial. On the other hand, had the court given the admonitions required by Rule 401(a), valid waiver of counsel could have been found, despite defendant's insistence that he did not wish to represent himself. We regret that the victim will be required to testify a second time. However, this record will not support a finding of valid waiver of counsel.

The material in sections V and VI is not to be published pursuant to Supreme Court Rule 23 (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, eff. July 1, 1994).

## VII. CONSECUTIVE SENTENCING

■ Defendant argues that the trial court erred in making his residential burglary and aggravated unlawful restraint convictions consecutive. He maintains that consecutive sentences were not required as to those offenses. He further argues that in the event the trial court sentenced him under section 5—8—4(b) of the Code (730 ILCS 5/5—8—4(b) (West 1992)), it abused its discretion because it failed to find that consecutive sentences were required to protect the public.

The State argues that the court used its discretion under section 5—8—4(b) when it sentenced him to consecutive sentences. It further argues that defendant has waived any contention of error because he failed to object to the sufficiency of the trial court's findings on consecutive sentences.

Even though this case must be remanded for a new trial, the question of consecutive sentences will undoubtedly arise again in the event of a conviction. We decline to find waiver on this issue. It has been held that the statutory sentencing requirements of sections 5—8—4(a) and 5—8—4(b) of the Code are not personal rights that either defendant or the State has authority to waive. Those subsections are phrased in mandatory terms, *i.e.*, the court "shall not" impose consecutive sentences unless certain statutory requirements are met. (See 730 ILCS 5/5—8—4(a), (b) (West 1992).) If the court sentences a defendant to consecutive terms where the statute requires concurrent terms, the court acts beyond its power. See *People v. Williams* (1994), 263 Ill. App. 3d 1098, 1108, 638 N.E.2d 207, 214, *appeal denied* (1994), 158 Ill. 2d 582, 645 N.E.2d 1367.

■ The rationale for the trial court's sentencing decision is unclear. At sentencing, the State argued for mandatory consecutive sentences under section 5—8—4(a) of the Code. The trial court noted the uncertainty inherent in that section and indicated it would prefer concurrent sentences. It would appear that the court did not accept the State's argument for mandatory consecutive sentences on all offenses because it imposed a concurrent sentence on the aggravated kidnaping conviction. However, the record contains no support for the State's contention that the court used its discretion under section 5—8—4(b) of the Code in imposing the consecutive sentences. Even so, we must assume that in the event of a conviction on retrial, the State will argue for mandatory consecutive sentences on all offenses and, thus, we must address the issue.

Sections 5—8—4(a) and (b) of the Code provide in pertinent part as follows:

> "(a) When multiple sentences of imprisonment are imposed on a defendant at the same time, *** the sentences shall run concurrently or consecutively as determined by the court. *** *The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or where the defendant was convicted of a violation of Section 12—13 or 12—14 of the Criminal Code of 1961,* [*i.e.*, criminal

sexual assault or aggravated criminal sexual assault,] *in which event the court shall enter sentences to run consecutively.* \*\*\*

(b) The court shall not impose a consecutive sentence except as provided for in subsection (a) unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." (Emphasis added.) 730 ILCS 5/5—8—4(a),(b) (West 1992).

The question here is whether the language of section 5—8—4(a) of the Code requires consecutive sentences for *all* offenses occurring as part of the same course of criminal conduct, where defendant is convicted of one of the offenses which triggers the mandatory consecutive sentencing provision of that section. We conclude that consecutive sentences for all such offenses are required.

There is scant case law on this issue. Our independent research has yielded only three cases that have squarely dealt with this question. In *People v. Ivey* (1994), 267 Ill. App. 3d 310, 642 N.E.2d 157, *appeal denied* (1995), 161 Ill. 2d 533, 649 N.E.2d 421, a third district case, defendant was convicted of aggravated battery, aggravated criminal sexual abuse, and aggravated criminal sexual assault. He was sentenced to consecutive prison terms on all offenses. On appeal, defendant argued that section 5—8—4(a) of the Code did not require consecutive offenses for all the offenses and that only the sentence for the aggravated criminal sexual assault conviction should be served consecutively. The court agreed with defendant. The court relied on the fact that the triggering offenses enumerated in section 5—8—4(a) of the Code are exceptions to the general rule that consecutive sentences are not permitted for offenses committed as part of a single course of conduct where there was no substantial change in the criminal objective. It indicated the enumerated offenses were singled out by the legislature for special treatment because of the seriousness of the offenses and the effects upon the victim. The court noted this rationale did not apply to other less serious offenses which were then subject to the general rule prohibiting consecutive sentences. The nature of these offenses was not changed by the fact that a more serious offense had also been committed. *Ivey*, 267 Ill. App. 3d at 312-13, 642 N.E.2d at 158.

In *Williams*, a first district case, the defendant was convicted of four counts of aggravated criminal sexual assault and two counts of aggravated kidnaping. The trial court sentenced him to consecutive prison terms on all offenses. One of his arguments on appeal was that the sentences for aggravated kidnaping should have been concur-

rent, rather than consecutive, because section 5—8—4(a) of the Code mandates concurrent sentences for those convictions. The court noted that this section contains ambiguities when applied to certain factual situations because it does not say which sentences are to be consecutive. The court held the consecutive sentences for the aggravated kidnaping convictions were improper, relying upon the principles of statutory construction which state that penal statutes are construed in favor of the accused and a general policy of leniency applies to the interpretation of criminal statutes. Thus, the court interpreted the statute to mean that mandatory consecutive sentences are required only for the crimes specifically enumerated in section 5—8—4(a) of the Code. *Williams*, 263 Ill. App. 3d at 1108, 638 N.E.2d at 215.

In *People v. Johnson* (1994), 262 Ill. App. 3d 565, 634 N.E.2d 1285, *appeal denied* (1994), 157 Ill. 2d 512, 642 N.E.2d 1293, defendant was sentenced to consecutive terms of imprisonment on five counts of aggravated criminal sexual assault and one count of home invasion. He broke into the victim's home at night and assaulted her in her bedroom. On appeal, one of the defendant's arguments was that the trial court had abused its discretion in imposing the sentences. He contended that such a lengthy sentence was error because it did not serve any rehabilitative purpose. He did not argue that consecutive sentences were improper. This court first noted that section 5—8—4(a) of the Code mandated consecutive sentences for those offenses occurring as part of the same course of criminal conduct committed by offenders convicted of aggravated criminal sexual assault. It then proceeded to a consideration of the length of the sentences, noting that the trial court did not sentence defendant to extended terms or even impose the maximum nonextended term for each offense. The court concluded by holding that the length of the overall sentence was justified. *Johnson*, 262 Ill. App. 3d at 572, 634 N.E.2d at 1290-91.

Defendant here argues *Johnson* did not hold that section 5—8—4(a) of the Code requires consecutive sentences for all offenses occurring in a single course of conduct, where one of the offenses is an enumerated offense. However, had this not been an implicit holding of the case, this court could not have affirmed the sentences. The offenses of which the defendant in *Johnson* was convicted were committed in a single course of criminal conduct. There is no support in the facts of that case for any other conclusion. Generally, a trial court lacks discretion to impose consecutive sentences, where the offenses were committed in a single course of conduct during which there was no substantial change in the criminal objective. (See *People v. Magnus* (1994), 262 Ill. App. 3d 362, 370, 633 N.E.2d 869, 875; *People v. Gramo* (1993), 251 Ill. App. 3d 958, 969, 623 N.E.2d 926, 934,

*appeal denied* (1994), 155 Ill. 2d 569, 633 N.E.2d 9; *People v. Bole* (1993), 155 Ill. 2d 188, 192-93, 613 N.E.2d 740, 742-43.) It is only when the special circumstances as described in section 5—8—4(a) of the Code are present that consecutive sentences are to be imposed. Where a trial court imposes a sentence not authorized by statute, the sentence is void and may be attacked at any time. (See *Williams,* 263 Ill. App. 3d at 1108, 638 N.E.2d at 214; *cf. Charles v. Gore* (1993), 248 Ill. App. 3d 441, 450, 618 N.E.2d 554, 560.) The duty to vacate a void judgment is based upon the inherent power of a court to expunge from its records void acts of which it has knowledge. (*Irving v. Rodriquez* (1960), 27 Ill. App. 2d 75, 79, 169 N.E.2d 145, 146-47.) Thus, if the sentence in *Johnson* was void, this court would have had a duty to *sua sponte* raise the issue. See *Magnus,* 262 Ill. App. 3d at 365, 633 N.E.2d at 872.

While acknowledging the views expressed by the First and Third District Appellate Courts, we choose to adhere to the precedent set in *Johnson* and hold that the trial court here was required under section 5—8—4(a) of the Code to impose consecutive sentences for all·offenses of which defendant was convicted. We note that the trial court imposed a concurrent sentence on the aggravated kidnaping charge. On remand, in the event of a conviction on either of the aggravated criminal sexual assault charges, the trial court will be required to impose consecutive sentences on all convictions for which sentence is imposed.

Accordingly, defendant's convictions and sentences are reversed and the cause remanded.

Reversed and remanded.

COOK, P.J., and GREEN, J., concur.