March 24, 1999

No. 2--97--0834   

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE OF    ) Appeal from the Circuit Court

ILLINOIS,                     ) of Lake County.

                              )

Plaintiff-Appellee,      ) No. 96--CF--3449

                              )

v.                            )          

                              ) 

LOUIS ROZO,                   ) Honorable                  

                              ) Henry C. Tonigan III

Defendant-Appellant.     ) Judge, Presiding.

_________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Louis Rozo, appeals from his convictions of murder (720 ILCS 5/9--1(a)(1), (a)(2) (West 1996)).  We affirm in part and vacate in part.

Defendant was charged with two counts of murder in the death of Christy Shervanian.  A jury found defendant guilty of both counts.  The trial court denied defendant’s motion for judgment notwithstanding the verdict or, alternatively, for a new trial and sentenced defendant to concurrent extended terms of 75 years in prison.  The court also denied defendant’s motion to reconsider the  sentence.  This appeal followed.

Defendant first contends that the court erred in allowing evidence regarding defendant’s sexual orientation.  The court denied defendant’s motion 
in limine, 
which sought to prohibit testimony that defendant was a homosexual.  The State introduced testimony of Rudy Zink, who testified that he and defendant had had a sexual relationship for approximately one and one-half years up to the time of Shervanian’s murder.  Zink also testified that he and Shervanian had been involved sexually approximately seven years earlier; the sexual aspect of their relationship lasted only briefly, but they remained good friends until Shervanian’s death.  After defendant denied being a homosexual during direct examination, the court also allowed the State, in rebuttal, to introduce into evidence a dildo found in a search of defendant’s apartment.

Rulings on the admission of evidence are within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion.  
People v. Reid, 
179 Ill. 2d 297, 313 (1997).  The court allowed the State to produce Zink’s testimony regarding his homosexual relationship with defendant in order to establish a motive for Shervanian’s murder.  The State sought to show that defendant was jealous of Zink’s continuous relationship with Shervanian and murdered Shervanian to end that relationship.  Evidence that tends to show that an accused had a motive for killing the deceased is relevant because it renders more probable that the accused did, in fact, kill the deceased.  
People v. Smith, 
141 Ill. 2d 40, 56 (1990).  Such evidence must, at least to a slight degree, tend to establish the existence of the alleged motive, and it must be shown that the accused knew of the facts that the State asserts constitute a motive for the charged offense.  
Smith, 
141 Ill. 2d at 56.  The motive must be attributable to the accused at the time the crime was committed.  
Smith, 
141 Ill. 2d at 57.  Here, the State was attempting to prove that a love triangle connecting defendant, Shervanian, and Zink was the motive for the slaying of Shervanian.  As all three members of the purported triangle were male, the sexual orientation of each member, including defendant, was relevant and material to the State’s case.  Evidence of defendant’s homosexuality tends to establish the existence of the motive, as Zink testified to sexual relations with both defendant and Shervanian and his continued relationship with Shervanian, which, according to Zink, sometimes interfered with his relationship with defendant.  The court did not abuse its discretion in allowing testimony regarding defendant’s sexual orientation.

However, the court did err in allowing the State to introduce into evidence the dildo found in defendant’s apartment.  There was no proof adduced at trial that a dildo tends to prove sexual preference, either homosexual or heterosexual.  The dildo had no probative value, and its introduction was inflammatory.  However, not every erroneous admission of evidence requires reversal.  
People v. Easley, 
148 Ill. 2d 281, 330 (1992).  The effect of the inflammatory evidence depends on the circumstances of the case.  
Easley, 
148 Ill. 2d at 330.  Here, the admission of the dildo was not so inflammatory as to deny defendant a fair trial.  The testimony regarding defendant’s homosexuality was already properly before the jury, as was defendant’s denial of homosexuality.  The dildo was of such minor consequence in the evidence in this case that we conclude that the error in its use as evidence was harmless and does not require reversal of defendant’s convictions.

Defendant next contends that the court erred in allowing the State to introduce evidence of other crimes.  Generally, such evidence may not be introduced to show a propensity to commit crime; however, evidence of other crimes is admissible if it tends to prove 
modus operandi, 
design, motive, or knowledge.  
People v. Oaks, 
169 Ill. 2d 409, 454 (1996).  Before such evidence is admitted, the State must show that a crime took place and that the accused committed it or participated in its commission.  
Oaks, 
169 Ill. 2d at 454.  Proof of the accused’s commission of or participation in the offense need not be beyond a reasonable doubt but must be more than a mere suspicion.  
Oaks, 
169 Ill. 2d at 454.  The trial court’s ruling as to admissibility of such evidence will not be reversed on appeal absent a clear showing of abuse of discretion.  
Oaks, 
169 Ill. 2d at 454.

The State was allowed to introduce evidence of two other crimes.  On October 13, 1996, Shervanian’s house was the subject of an arson.  The State presented evidence of the damage to the home and evidence from the investigation regarding the accellerant used.  The State also presented the testimony of Officer Gerald Halley of the Highland Park police department, who testified that he conducted a stakeout of Shervanian’s home after the fire to observe unusual suspects, noting that usually someone involved in an arson will return to the scene to observe the damage.  Halley testified that two vehicles caught his attention, as the drivers stopped to view the residence.  One vehicle was driven by defendant, who twice drove by the house within the space of two to three minutes.  

The State also presented evidence of a bomb that was attached to Shervanian’s van on November 21, 1996.  The tape used to assemble the bomb matched a roll of tape subsequently found in defendant’s apartment.  Police discovered pages from a book entitled The Anarchist’s Cookbook on Shervanian’s front lawn.  The pages contained recipes for a Molotov cocktail, black powder, a car trap, and other devices.  Several witness testified that defendant had spoken to them about the book in the past.  The police also found in defendant’s apartment a bag of plastic ties that were similar to those used to secure the bomb to Shervanian’s van.

We conclude that the court did not abuse its discretion in allowing the introduction of evidence of other crimes.  The evidence of defendant’s participation in these crimes is more than mere suspicion, especially when considering that the murder and the other crimes all occurred within a 49-day span.  The evidence suggests that defendant was involved in these crimes, all against the same victim.  There was no error in allowing evidence of these crimes.

Defendant next contends that the court erred in allowing Edward Bender to testify as an expert.  Whether an individual is an expert on a particular subject is to be determined by the trial court in an exercise of its sound discretion.  
People v. Miller, 
173 Ill. 2d 167, 186 (1996).  A person will be allowed to testify as an expert if his experiences and qualifications give him knowledge that is not common to lay persons, and where his testimony will aid the trier of fact in reaching its conclusions.  
Miller, 
173 Ill. 2d at 186.  There is no precise requirement as to how an expert acquires skill or experience; he may gain his knowledge through practical experience or scientific study, training, or research.  
People v. Novak, 
163 Ill. 2d 93, 104 (1994).  The expert need only possess knowledge or experience beyond that of the average citizen.  
Miller, 
173 Ill. 2d at 186.

Bender testified that he had a bachelor’s degree in chemistry and had worked at the FBI laboratory for 10 years before beginning a 17-year stint as a forensic chemist for the Bureau of Alcohol, Tobacco, and Firearms (ATF).  Bender’s job at ATF included analyzing bombs and bomb debris to identify the type of device and the components used, including pipes, wires, tape, and plastics.  His job included fracture break comparison, which involves comparing pieces of tape to rolls of tape to determine if the piece came off of that roll. In the case before us, Bender microscopically compared the ends of several pieces of tape used to hold together explosive devices to a roll of tape subsequently found in defendant’s apartment.  Bender testified that, to a reasonable degree of forensic scientific certainty, the tape used on the explosive devices came from the roll of tape found in defendant’s apartment.

We conclude that the court did not err in allowing Bender to testify as an expert.  His knowledge and experience were clearly beyond that of the average citizen.  The work involved in comparing and matching the ends of pieces of tape is certainly more detailed and requires more knowledge than defendant would have us believe, as he argues that Bender merely compared tape ends and looked at the tape.  Bender’s work involved the use of a microscope and knowledge based on the experience of prior matches.  This was the proper subject of expert testimony, and the court did not err in allowing Bender to testify as an expert.

Defendant next contends that the court erred in allowing the State to introduce the testimony of Cecilia Doyle, a DNA group supervisor in the biochemistry section of the Illinois State Police (ISP).  Doyle testified about the ISP DNA-case acceptance policy regarding the analysis of evidence submitted by outside jurisdictions.  Part of the policy is that, once a probative match, such as identifying the victim’s blood on an item from the suspect or the suspect’s blood on the victim, is made, the lab will accept no further evidence on that case because of limited resources and a backlog of cases.  Doyle then testified that the ISP refused to perform DNA testing on some blood found under Shervanian’s fingernails because probative matches had already been obtained in the case.

Defendant now argues that Doyle impermissibly testified to the probative value of certain evidence compared to other evidence.  We disagree.  Doyle’s testimony merely explained to the jury internal procedures at the Illinois State Police crime laboratory and why certain evidence was not tested at their facility.  The State argues, and we agree, that, without this testimony, the jury would be left to speculate as to whether police or lab personnel were lax or incompetent in collecting and testing evidence in this case.  Doyle’s testimony did not invade the province of the jury by evaluating the probative value of different pieces of evidence.  It merely explained why some evidence was tested and why other evidence was not tested.  The court did not err in admitting this evidence.

Defendant next contends that the court erred in denying defendant’s motion for a 
Frye 
hearing regarding the admissibility of polymerase chain reaction (PCR) DNA testing.  We disagree.

Whether to admit expert testimony about a new scientific technique is a decision left to the sound discretion of the trial court.  
Miller, 
173 Ill. 2d at 187. Illinois follows the 
Frye 
standard for the admission of novel scientific evidence, which requires that the evidence be generally accepted in the relevant scientific community before it can be admitted.  
Miller, 
173 Ill. 2d at 187-88.  DNA evidence has long been held accepted within the relevant scientific fields involved and admissible at trial.  See, 
e.g., Miller, 
173 Ill. 2d 167; 
People v. Stremmel, 
258 Ill. App. 3d 93 (1994); 
People v. Lipscomb, 
215 Ill. App. 3d 413 (1991).  However, those cases involved the use of the restriction-fragment-

length-polymorphism (RFLP) process of obtaining a DNA profile from a given DNA sample.  In the case before us, the State Police used the PCR method.  The use of the PCR method was recently addressed by the Appellate Court, Fourth District, in the case of 
People v. Pope, 
284 Ill. App. 3d 695 (1996).  In 
Pope, 
the court held that "PCR-based methods of DQ-Alpha typing and polymarker typing for DNA identification are now generally accepted in the relevant scientific communities involved, and trial courts need not conduct future 
Frye 
hearings on this issue."  
Pope, 
284 Ill. App. 3d at 703.

The trial court in this case relied on 
Pope 
in denying defendant’s motion for a 
Frye 
hearing.  Defendant argues that the procedures used by the state police in this case were different from those described in 
Pope; 
therefore, 
Pope 
could not be the basis for allowing DNA evidence in this case without a 
Frye 
hearing.  We agree with our brethren in the fourth district that PCR is a generally accepted method of DNA analysis.  Once it is determined that a scientific method is generally accepted, a 
Frye 
test is no longer necessary each time the State seeks to use evidence obtained by that method.  A defendant may attack the actual procedures used and the application of the method during cross-examination at trial.  However, that is not the basis for a 
Frye 
hearing.  We also note that one of the tests--electrophoresis --that defendant claims was not considered in the 
Pope 
case was specifically addressed in 
Stremmel 
as part of the RFLP procedure that was found to be generally accepted.  See 
Stremmel, 
258 Ill. App. 3d at 103.  We conclude that the court did not abuse its discretion by refusing to hold a 
Frye 
test regarding the PCR method of DNA testing.

Defendant finally contends that the cumulative effect of the trial court’s errors deprived him of a fair trial.  However, as we have determined that the court committed only one harmless error, defendant received a fair trial.

In the interests of judicial economy, we will address one further issue that neither party raises.  Defendant was convicted of two counts of murder in the death of Christy Shervanian and sentenced to concurrent terms of imprisonment.  However, multiple convictions are impermissible when they arise from the same physical act.  
People v. Bolden, 
210 Ill. App. 3d 940, 946 (1991).  One of defendant’s convictions must therefore be vacated
.  
Accordingly, we vacate the conviction and sentence imposed for murder premised upon section 9--1(a)(2) of the Criminal Code of 1961 (720 ILCS 5/9--1(a)(2) (West 1996)) as charged in count II of the indictment.

The judgment of the circuit court of Lake County is affirmed in part and vacated in part.

Affirmed in part and vacated in part.

INGLIS and HUTCHINSON, JJ., concur.