Docket No. 87770–Agenda 31–May 2000.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LINDA BASLER, Appellee.

Opinion filed November 16, 2000.

CHIEF JUSTICE HARRISON delivered the judgment of the court:

Following a jury trial in the circuit court of Jackson County, defendant, Linda Basler, was convicted of driving under the influence and sentenced to 12 months’ probation. The appellate court reversed and remanded for a new trial. We granted the State’s petition for leave to appeal. 177 Ill. 2d R. 315. For the reasons that follow, we now affirm the appellate court’s judgment as modified.

In October of 1996, defendant was arrested by police and charged with driving under the influence of alcohol (625 ILCS 5/11–501 (West 1996)). The circuit court appointed the Jackson County public defender to represent her. On the day of her trial, defendant requested a continuance to seek private counsel on the grounds that she and her appointed attorney did not agree on certain matters. Defendant also advised the court that she had been ill, that she did not feel capable of assisting in her defense, and that some of her witnesses were not able to testify that day.

The circuit court denied defendant’s motion, and the matter proceeded to trial before a jury. The jury returned a verdict of guilty. The circuit court then sentenced defendant to 12 months’ probation and fined her $300. The court also ordered defendant to pay $5 per month for the services of the probation office and to pay $25 for the services of her public defender.

Defendant filed a post-trial motion for a new trial, arguing that the State had failed to prove its case beyond a reasonable doubt. That motion was denied, and defendant appealed. As grounds for her appeal, defendant asserted that the circuit court abused its discretion when it denied her motion for a continuance without making further inquiry into the circumstances involved and without making a finding that she had brought the motion to delay trial. Defendant further contended, among other things, that the trial court should not have ordered her to pay a fee to the public defender’s office without holding a hearing on her financial circumstances and her ability to pay.

The appellate court reversed and remanded for a new trial in an unpublished order. No. 5–97–0979 (unpublished order under Supreme Court Rule 23). As grounds for its decision, the court held that the circuit court had committed reversible error when it rejected defendant’s motion for a continuance without inquiring further into the circumstances or finding that she had presented the motion merely to delay the trial. The appellate court further held that the trial judge should not have required defendant to pay the $25 fee for her public defender without first holding a hearing on her ability to pay. In disposing of the case, the appellate court directed the circuit court to hold such a hearing on remand and to provide a court reporter to memorialize that hearing.

Defendant petitioned for rehearing, asking the appellate court to consider additional claims she had raised on appeal, including a claim that the circuit court should not have received evidence of the results of a horizontal-gaze-nystagmus (HGN) test without first conducting a hearing under 
Frye v. United States
, 293 F. 1013 (D.C. Cir. 1923). Although the appellate court purported to deny defendant’s petition, it vacated its decision and filed a new, published opinion in its stead.

In its opinion, the court reiterated its prior holdings in the case, but added a discussion regarding the 
Frye
 issue. 304 Ill. App. 3d 230. The court noted that it had previously ruled that the HGN test meets the 
Frye 
standard and is admissible when a proper foundation is laid. See 
People v. Buening
, 229 Ill. App. 3d 538, 545-46 (1992). The court observed, however, that 
People v. Kirk
, 289 Ill. App. 3d 326 (1997), a subsequent decision from another district of the appellate court, took a different view. In 
Kirk
 a divided panel of the Fourth District of the appellate court held that it is necessary to conduct a Frye hearing prior to the admission of the result of a HGN test in a criminal trial for DUI. 
Kirk
, 289 Ill. App. 3d at 331.

Although it cited 
Kirk
 with approval, the appellate court in this case stopped short of embracing that decision and overruling 
Buening
. Similarly, it did not expressly hold that the trial court had erred in admitting the HGN test results at the original trial without first conducting a 
Frye
 hearing. Instead, it simply suggested that if a new trial is held following remand and the State wishes to introduce evidence of the HGN test results, then “a 
Frye 
hearing might well be appropriate.”

On this appeal, the State does not take issue with the appellate court’s decision to reverse and remand for a new trial based on the circuit court’s refusal to grant defendant a continuance. Nor does it contest the appellate court’s determination that the trial judge should not have required defendant to pay the $25 fee for her public defender without first holding a hearing on her ability to pay. The State’s sole concern is the appellate court’s handling of the 
Frye
 issue.

The State contends that the appellate court’s decision is problematic because it denied the State the opportunity to address defendant’s request that the appellate court address admissibility of HGN test results under the 
Frye
 standard. According to the State, the appellate court’s decision to vacate its original order and file a new opinion in its place was tantamount to granting defendant the relief she requested on rehearing. Where a petition for rehearing is allowed, the opposing party has the right under our rules to respond. 155 Ill. 2d R. 367(d). Because the court in this case purported to deny defendant’s petition for rehearing, however, the State was deprived of that right. 155 Ill. 2d R. 367(d).

The appellate court’s decision is also problematic, according to the State, because its directions to the circuit court are ambiguous and confusing. As we have indicated, the appellate court’s decision neither overrules 
Buening
 nor expressly adopts 
Kirk
 and gives no clear indication as whether a 
Frye
 hearing is, in fact, required on remand.

Before considering the State’s contentions, we must first address the position taken by defendant. In responding to the State’s arguments, defendant goes beyond the points raised by the State and invites our court to use this matter as a vehicle for considering whether HGN test results should ever be admitted in prosecutions for driving under the influence. This we decline to do. The problem with undertaking such an expansive analysis is that validity of the HGN test was never challenged in the trial court. Defense counsel raised no objection to the admission of the HGN test results against defendant, and use of the HGN test results was not contested by defendant in her post-trial motion.

As a general rule, a defendant must object to an error at trial and include the objection in a post-trial motion in order to preserve it for review on appeal. 
People v. Enoch
, 122 Ill. 2d 176, 186 (1988). A reviewing court may override considerations of waiver where plain errors or defects affecting substantial rights are involved. 134 Ill. 2d R. 615(a). The present case, however, involves neither circumstance. In addition, because validity of the HGN test was not raised below, the record is devoid of the evidentiary material necessary to assess defendant’s challenge. Such material cannot be presented to an appellate court in the first instance. We are not triers of fact. Our function is to serve as a court of review. Accordingly, even if we wanted to take up the matter, we would have no informed basis for doing so.

Given the lack of pertinent evidence in the trial court, the absence of appropriate objections by defense counsel, and the failure of defendant to raise the issue in her post-trial motion, the appellate court’s decision to address the validity of HGN test results on rehearing is difficult to comprehend. Wholly aside from the question of whether the State was prejudiced by its inability to file a response under Rule 367(d) (155 Ill. 2d R. 367(d)), the posture of the case was such that the appellate court could not possibly make a definitive ruling on the matter. At best, its conclusions could only be tentative and conditional. The result is a remand order that obfuscates the law and offers no clear guidance to the trial court. Based upon what the appellate court has written, the trial court has no way to judge whether and under what circumstances a 
Frye
 hearing must actually be conducted. Accordingly, the appellate court’s remand directions do little to advance the court’s stated goal in addressing the issue, which was to prevent error on retrial.

The appellate court’s analysis of the 
Frye
 issue is flawed for another, more fundamental reason. Defendant cited research to the court questioning the validity of the HGN test. In ruling as it did, the court apparently believed that requiring a 
Frye
 hearing was the appropriate mechanism for bringing that research before the trial court so that the issue of the test’s validity could be reassessed. The court’s concern is legitimate. Science is not static, and methods must exist for reexamining the validity of scientific tests when new information is acquired. What the appellate court failed to appreciate is that the 
Frye
 test is not an appropriate vehicle for accomplishing that purpose.

Frye v. United States
, 293 F. 1013 (D.C. Cir. 1923), which is followed in Illinois, pertains to the admission of scientific evidence which is novel. It requires that evidence be generally accepted in the relevant scientific community before it can be admitted. 
People v. Miller
, 173 Ill. 2d 167, 187-88 (1996). The HGN test was found to meet the 
Frye
 standard in 
People v. Buening
, 229 Ill. App. 3d 538 (1992). That decision, in turn, was followed by the appellate court in 
People v. Wiebler
, 266 Ill. App. 3d 336, 339 (1994).

In the wake of 
Buening
 and 
Wiebler
, HGN test results have been routinely admitted in prosecutions for driving under the influence. The tests are no longer “novel” in any meaningful sense. As a result, the State should not be put to the burden of having to reestablish the test’s validity in every case. See 
People v. Kirk
, 289 Ill. App. 3d 326, 335-37 (1997) (Steigmann, P.J., specially concurring). Where, as here, a scientific method has been shown to be generally accepted, a 
Frye
 test is no longer necessary each time the State seeks to use evidence obtained by that method. See 
People v. Rozo
, 303 Ill. App. 3d 787, 793 (1999); see also 
People v. Thomas
, 137 Ill. 2d 500, 518 (1990) (trial court did not err by failing to hold a 
Frye
 hearing on admissibility of electrophoresis testimony after taking judicial notice of electrophoresis as an accepted scientific procedure based on the prior decision in 
People v. Partee
, 157 Ill. App. 3d 231 (1987), that such testimony was admissible);
 People v. Johnson
, 262 Ill. App. 3d 565, 568-69 (1994) (trial court appropriately relied on precedential case law to determine that the proffered DNA testimony was admissible and had no need to conduct a 
Frye 
hearing prior to making its decision on the admissibility of that evidence). To the extent that the appellate court’s decision in 
People v. Kirk
, 289 Ill. App. 3d 326 (1997), suggests otherwise, it is hereby overruled.

Although the State is no longer required to show that the HGN test satisfies the 
Frye
 standard before it may introduce the results of an HGN test into evidence, the validity of HGN tests and test results is not beyond challenge. If a defendant has evidence showing that HGN tests are scientifically unsound, then he may interpose the appropriate objection to the HGN test results and present his supporting evidence to the trial court. If the trial court is persuaded by the defendant’s evidence, then the court has the right to bar its admission. Note, however, that it is the defendant’s obligation to show that the test results are infirm. It is not the responsibility of the State to show that the tests and results are scientifically valid. Absent proof by the defense that the HGN test is unsound, the State need only show that the officer who gave the test was trained in the procedure and that the test was properly administered.

For the foregoing reasons, the judgment of the appellate court is affirmed, as modified herein, and the matter is remanded to the circuit court for further proceedings consistent with this opinion.

Affirmed as modified.

JUSTICE HEIPLE, specially concurring:

I concur in the plurality’s holding that defendant waived any argument concerning the admissibility of horizontal-gaze-nystagmus (HGN) test results by failing to raise this argument in the trial court. In light of this holding, the plurality’s additional discussion concerning the admissibility of HGN test results is entirely 
dicta
 without precedential value.

JUSTICE BILANDIC joins in this special concurrence.

JUSTICE McMORROW, dissenting:

The defendant, Linda Basler, was convicted of driving under the influence based in part on the arresting officer’s testimony that defendant failed the Horizontal Gaze Nystagmus (HGN) test. An officer who administers an HGN test asks the driver to cover one eye and focus the other on an object, such as a pen, held by the officer at the driver’s eye level. As the officer moves the object gradually out of the driver’s field of vision toward the ear, the officer watches the driver’s eyeball to detect involuntary jerking. This jerking may indicate that the driver’s blood-alcohol content exceeds the legal limit. See 
People v. Buening
, 229 Ill. App. 3d 538, 539-40 (1992).

In an unpublished order, the Fifth District of the appellate court reversed defendant’s conviction. The appellate court concluded that the trial judge erred in summarily denying a motion for a continuance which had been filed by defendant. According to the appellate court, the trial judge should have inquired into defendant’s circumstances and determined whether the motion was merely an attempt to delay trial.

Defendant subsequently filed a petition for rehearing before the appellate court. In this petition, defendant asked the appellate court to consider additional claims she had raised on appeal, including a claim that the circuit court should not have received evidence of the HGN test without first conducting a hearing pursuant to 
Frye v. United States
, 293 F. 1013 (D.C. Cir. 1923). 
Frye 
requires that novel scientific evidence be generally accepted in the relevant scientific community before it may be admitted at trial. 
People v. Miller
, 173 Ill. 2d 167, 187-88 (1996). The appellate court thereafter issued a published opinion in which it reiterated its prior conclusions and stated that defendant’s petition for rehearing was denied. Nevertheless, in the published opinion, the appellate court addressed the merits of defendant’s argument regarding the use of HGN testing and the 
Frye
 standard.

Addressing the 
Frye
 issue, the court noted that the Fifth District of the appellate court concluded, in 
People v. Buening
, 229 Ill App. 3d 538 (1992), that HGN testing is generally accepted in the relevant scientific community and that such testing is admissible when a proper foundation is laid. However, in 
People v. Kirk
, 289 Ill. App. 3d 326 (1997), the Fourth District disagreed with 
Buening
 and criticized its analysis regarding general acceptance. In particular, the 
Kirk
 court disagreed with 
Buening
’s heavy reliance upon a judicial decision from Arizona (
State v. Superior Court
, 149 Ariz. 269, 718 P.2d 171 (1986) (
en banc
)) which concluded that HGN testing meets the 
Frye
 standard. 
Kirk
 noted that relying exclusively upon prior judicial decisions to establish general scientific acceptance can be a “ ‘hollow ritual’ ” if the underlying issue of scientific acceptance has not been adequately litigated. 
Kirk
, 289 Ill. App. 3d at 333, quoting 1 J. Strong, McCormick on Evidence §203, at 870 n.20 (4th ed. 1992). 
Kirk 
concluded that the question of scientific acceptance had not been “fully and thoroughly litigated” (
Kirk
, 289 Ill. App. 3d at 334) in 
Buening
 or in 
State v. Superior Court
. 
Kirk
 expressed no opinion on whether HGN testing met the 
Frye
 standard. Instead, the court held that the general scientific acceptance of HGN testing had not yet been established as a matter of law.

The appellate court in the instant matter stated that it agreed “with 
Kirk
 that relying on other courts’ opinions to conclude that the HGN test meets the 
Frye
 standard may cause problems.” 304 Ill. App. 3d 230, 234. The court then stated: “[W]e suggest to the trial court that if there is a retrial and the State wishes to introduce evidence of the HGN test results, a 
Frye
 hearing might well be appropriate.” 304 Ill. App. 3d at 234. The court reversed defendant’s convictions and remanded the matter to the trial court.

On appeal to this court, the State challenges the appellate court’s handling of the 
Frye
 issue. The State argues that the appellate court’s decision to address the 
Frye
 issue upon denial of defendant’s petition for rehearing denied the State the opportunity to respond to defendant’s arguments. In addition, according to the State, the appellate court’s decision is confusing because it does not expressly follow either 
Kirk
 or 
Buening
 and does not state whether a 
Frye
 hearing is, in fact, required on remand. The defendant, in turn, asks that this court rule upon whether HGN testing meets the 
Frye 
standard.

A plurality of this court (Chief Justice Harrison, Justice Miller, and Justice Rathje) agrees with the State that the appellate court should not have addressed the 
Frye
 issue upon denial of defendant’s petition for rehearing. The plurality does not believe, however, that the appellate court should have avoided the issue because the State was not allowed to respond to defendant’s arguments in the petition for rehearing. Instead, the plurality concludes that, because the 
Frye
 issue was not raised in the trial court, there was a “lack of pertinent evidence” before the appellate court and, therefore, “the appellate court could not possibly make a definitive ruling on the matter.” Slip op. at 4. The plurality also expressly declines to decide on the ultimate question as to “whether HGN test results should ever be admitted in prosecutions for driving under the influence.” Slip op. at 3. According to the plurality, because no 
Frye
 hearing was held in the circuit court, “the record is devoid of the evidentiary material necessary to assess defendant’s challenge. Such material cannot be presented to an appellate court in the first instance. We are not triers of fact. Our function is to serve as a court of review. Accordingly, even if we wanted to take up the matter, we would have no informed basis for doing so.” Slip op. at 4.

The plurality then goes on to state that the appellate court’s 
Frye
 analysis “is flawed for another, more fundamental reason.” Slip op. at 4. The plurality notes that the appellate court in 
Buening
 held that HGN testing satisfies the 
Frye
 standard and that this decision was followed in 
People v. Wiebler
, 266 Ill. App. 3d 336 (1994). The plurality concludes that, based upon these appellate decisions, HGN testing is “no longer ‘novel’ in any meaningful sense,” that HGN testing “has been shown to be generally accepted” and that “the State should not be put to the burden of having to reestablish the test’s validity in every case.” Slip op. at 5. Therefore, according to the plurality, the appellate court in 
Kirk
 was wrong when it held that the general scientific acceptance of HGN testing 
has not been legally established. The plurality states that it would overrule 
Kirk
 and states that the appellate court in the instant matter was wrong to suggest that a 
Frye
 hearing might be required.

There are several serious problems with the plurality opinion. The most glaring is that the opinion contains a large internal contradiction. The plurality states the following:

“In responding to the State’s arguments, defendant goes beyond the points raised by the State and invites our court to use this matter as a vehicle for considering whether HGN test results should ever be admitted in prosecutions for driving under the influence. 
This we decline to do.
 The problem with undertaking such an expansive analysis is that validity of the HGN test was never challenged in the trial court. Defense counsel raised no objection to the admission of the HGN test results against defendant, and use of the HGN test results was not contested by defendant in her post-trial motion.” (Emphasis added.) Slip op. at 3-4.

From these statements it appears that the plurality will not decide whether HGN testing meets the 
Frye
 standard but, instead, will leave that question to another day.

However, the plurality then goes on to expressly endorse the holdings of 
Buening
 and 
Wiebler
:

“[T]he State should not be put to the burden of having to reestablish the [HGN] test’s validity in every case. [Citation.] 
Where, as here, a scientific method has been shown to be generally accepted
, a 
Frye
 test is no longer necessary each time the State seeks to use evidence obtained by that method.
”
 (Emphasis added.) Slip op. at 5.

 Thus, at the outset of its analysis, the plurality unequivocally states that it expresses no opinion on whether HGN testing meets the 
Frye
 standard. Yet, incredibly, only a few paragraphs later, the plurality states that HGN testing meets the 
Frye
 standard. The plurality opinion “obfuscates the law and offers no clear guidance.” Slip op. at 4. The plurality does a disservice to the bar and to this court with this type of analysis.

There are other problems with the plurality’s analysis in addition to the contradiction noted above. Recall that the appellate court in 
Kirk
 disagreed with 
Buening
’s heavy reliance upon a single judicial opinion to conclude that HGN testing meets the 
Frye
 standard. Recall too the holding of the court in 
Kirk
, 
i.e.
, that it could not resolve whether HGN testing meets the 
Frye
 standard because the issue had not been “fully and thoroughly litigated” in the circuit court. This holding is precisely the same conclusion reached at the outset of the plurality’s analysis. The plurality states that the appellate court in this case should not have addressed the 
Frye
 issue because it was not litigated in the circuit court and, therefore, there was a “lack of pertinent evidence” by which it could be resolved. Moreover, according to the plurality, this court cannot address the 
Frye
 issue because “the record is devoid of the evidentiary material necessary to assess defendant’s challenge.” Slip op. at 4.

Given that the plurality apparently agrees with 
Kirk’
s analysis, why does the plurality state that it would overrule that decision? Further, why does the plurality agree with 
Buening
 when that court apparently did not rely upon “evidentiary material[s]” (slip op. at 4) in reaching its conclusion that HGN testing meets the 
Frye
 standard? Is the plurality saying that the 
Frye
 issue 
was
 fully and adequately litigated in 
Buening
 even though it appears that the court relied exclusively upon judicial opinions rather than testimony adduced in the circuit court to establish the general acceptance of HGN testing? The plurality obviously approves of 
Buening
. Yet, if the procedure to establish general acceptance followed by the appellate court in 
Buening
 was proper, 
i.e.
, relying upon judicial opinions, then why does the plurality hold that this court cannot resolve the 
Frye
 issue because of a lack of factual findings in the record? The plurality’s failure to address these issues only engenders confusion.

The plurality states
 that it overrules 
Kirk
 because, before 
Kirk
 addressed the 
Frye
 issue, 
Buening
 and 
Wiebler
 concluded that HGN testing meets the 
Frye
 standard. Therefore, according to the plurality, HGN testing was no longer “novel” scientific evidence when the issue reached the 
Kirk
 court and that 
court should have simply taken judicial notice that the issue had been resolved. In essence, the plurality determines that once any district of the appellate court concludes that scientific evidence passes the 
Frye
 test, that district and every other district are bound by the first decision. There is no authority for such a result. The cases the draft cites in support of this holding (see slip op. at 5) state only that trial courts acted correctly in relying on appellate case law. Certainly the districts of the appellate court may follow each others’ decisions, but they are not required to do so. The plurality mistakenly equates being generally accepted in the 
legal
 community with being generally accepted in the 
scientific
 community (the standard for the 
Frye
 test). Scientific evidence may be “generally accepted” in the legal community once a district of the appellate court has determined that it passes the 
Frye
 test, but this is not a guarantee that the initial decision was correct. It is patently erroneous to bar subsequent appellate panels from requiring a 
Frye
 hearing if they question the original decision.

Instead of following the confusing and contradictory path taken by the plurality, I would simply address the issue initially presented by the State. The State argues that it was unfair for the appellate court to address the 
Frye
 issue after receiving defendant’s petition for rehearing because the State was not allowed to respond to that petition. However, our rules only require the appellate court to allow the opposing party to respond when the court allows a petition for rehearing. 155 Ill. 2d R. 367(d). In this case, the court did not allow the petition for rehearing; rather, it modified its disposition upon denial of rehearing (and changed the disposition from an unpublished Rule 23 order to a published opinion). Accordingly, the appellate court was not required to allow the State to respond.

This result does not subvert the purpose of our rules. If the opponent of the initial petition is unhappy with the disposition as modified upon denial of rehearing, the opponent may file its own petition for rehearing. Our rules only bar subsequent petitions for rehearing after the appellate court has 
granted
 a petition for rehearing. 155 Ill. 2d R. 367(e). Thus if the State was dissatisfied with the appellate court’s disposition it could have filed its own petition for rehearing, which in fact it did in this case. This allowed the State to make any and all arguments it could have made in responding to the defendant’s original petition for rehearing.

It is true that the appellate court’s resolution of the 
Frye
 issue is confusing. As the plurality notes, the appellate court neither explicitly overrules 
Buening
 nor expressly adopts 
Kirk
, and does not clearly state whether a 
Frye
 hearing must be held on remand. I would hold, therefore, that the cause should be remanded to the appellate court for the limited purpose of clarifying its holding.

Finally, it is important to emphasize that the issue of whether HGN testing meets the 
Frye
 standard has not been resolved by the opinions issued by this court in the case at bar. The reasoning and result of 
Kirk
 have 
not
 been overruled by this court, just as the reasoning and result of 
Buening
 have 
not
 been affirmed. See slip op. at 6 (Heiple, J., specially concurring, joined by Bilandic, J.).

JUSTICE FREEMAN joins in this dissent.