THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAUL B. WILLIAMS, Defendant-Appellant.

Fourth District No. 4—99—0325

Opinion filed December 15, 2000.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Thomas R. Dodegge, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

In the circuit court of Macon County, a·jury found defendant Paul B. Williams guilty of first degree murder. 720 ILCS 5/9—1(a)(1) (West 1994). The trial court sentenced defendant to natural life imprisonment. On appeal, the issues are whether (1) the trial court committed an abuse of discretion in admitting evidence of defendant's prior convictions, (2) defense trial counsel rendered ineffective assistance of counsel by offering evidence of defendant's past convictions, (3) the trial court committed an abuse of discretion by allowing the State to cross-examine defendant about prior convictions and pursue evidence about the three prior convictions to further impeach defendant, (4) the admission of evidence concerning defendant's prearrest silence violated defendant's right to remain silent, (5) the trial court committed an abuse of discretion in admitting deoxyribonucleic acid (DNA) testing results without conducting a hearing pursuant to *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), (6) the trial court committed an abuse of discretion in admitting evidence that defendant was incarcerated in the distant past and allowing the prosecutor to question defendant and derisively argue about defendant's assumed name, (7) defendant was proved guilty beyond a reasonable doubt, (8) the trial court misunderstood the mitigating evidence offered at defen-

dant's sentencing hearing, and (9) defendant's sentence was excessive. We affirm.

We initially consider the issues relating to evidence of defendant's prior convictions. Defendant argues that the trial court did not adequately conduct a balancing test as required by *People v. Montgomery*, 47 Ill. 2d 510, 516-19, 268 N.E.2d 695, 698-700 (1971), and improperly used the mere-fact method of impeachment by prior convictions.

■ The trial court's admission of evidence of defendant's prior convictions will not be reversed absent an abuse of discretion, but the trial court is expected to balance the probative value of the evidence against its prejudicial impact before the jury. *People v. McKibbins*, 96 Ill. 2d 176, 187-88, 449 N.E.2d 821, 826 (1983).

> "Before admitting evidence of a prior conviction for purposes of impeachment, a trial court must balance the probative value versus the prejudicial effect. *People v. Williams*, 161 Ill. 2d 1, 38-39, 641 N.E.2d 296, 311-12 (1994). Impeachment of a witness' credibility by a prior conviction is allowed if the conviction was for either a misdemeanor involving dishonesty or false statement or a felony and the trial judge determines the probative value of the evidence substantially outweighs the danger of unfair prejudice. *People v. Montgomery*, 47 Ill. 2d 510, 516, 268 N.E.2d 695, 698 (1971); *People v. Maxwell*, 272 Ill. App. 3d 57, 61, 650 N.E.2d 298, 301 (1995)." *People v. Jennings*, 279 Ill. App. 3d 406, 409, 664 N.E.2d 699, 702 (1996).

On direct examination, defendant testified that he had three prior felony convictions on November 18, 1981 (Cuyahoga County, Ohio, case No. CR—167990); November 29, 1982 (Cuyahoga County case No. CR—176497); and June 12, 1997 (Macon County case No. 97—CF—553). Defendant also testified that when he first talked to the police during the murder investigation, he lied when he told the police the last time he had been at the victim's trailer was two weeks before the murder and when he denied having sex with her. Defendant testified he lied because he was scared. During closing argument, defense counsel attempted to persuade the jury that the defendant was scared and lied to the police because of his prior felony convictions.

■ "If evidence of the prior conviction is admissible independently of impeachment purposes—and therefore independent of *Montgomery*—then the *Montgomery* test becomes inapposite. This independent basis trumps any *Montgomery* inquiry." *People v. Hester*, 271 Ill. App. 3d 954, 959, 649 N.E.2d 1351, 1356-57 (1995).

■ Defendant concedes this issue was not raised in the trial court and is waived but argues that this court should consider it under the

plain error doctrine (134 Ill. 2d R. 615(a)). Before considering the plain error exception, we determine whether error occurred at all. *People v. Williams*, 193 Ill. 2d 1, 27, 737 N.E.2d 230, 245 (2000). We find no error. The evidence was not offered by the State to impeach defendant but by the defense to explain why defendant lied to the police. For this purpose, the *Montgomery* balancing test had no application.

■ Similarly, the use of the mere-fact method by the defense in this case, where the *Montgomery* rule has no application, does not require reversal. Moreover, even if it was error, defendant could not rely on it on appeal. Defendant may not be heard to complain of error he injected into his own trial. *People v. Scott*, 148 Ill. 2d 479, 531, 594 N.E.2d 217, 238 (1992).

■ Defendant argues that the use of the prior convictions by the defense in this fashion constituted ineffective assistance of defense trial counsel. Claims of ineffective assistance are judged under the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 687-94, 80 L. Ed. 2d 674, 693-98, 104 S. Ct. 2052, 2064-68 (1984). *People v. Morgan*, 187 Ill. 2d 500, 529, 719 N.E.2d 681, 698 (1999).

> "Decisions concerning which witnesses to call at trial and what evidence to present on defendant's behalf ultimately rest with trial counsel. *People v. Ramey*, 152 Ill. 2d 41, 53-55 (1992). These types of decisions have long been viewed as matters of trial strategy (*People v. Haywood*, 82 Ill. 2d 540, 543-44 (1980)), which are generally immune from claims of ineffective assistance of counsel. *People v. Guest*, 166 Ill. 2d 381, 394 (1995)." *People v. West*, 187 Ill. 2d 418, 432, 719 N.E.2d 664, 673 (1999).

Defense counsel's use of the prior convictions to explain why defendant initially lied to the police was a matter of trial strategy. Defense trial counsel did not entirely fail to conduct a meaningful adversarial testing of the State's case. Not only did the strategy inform the jury of defendant's theory, but it avoided informing the jury of the nature of the prior offenses and suggested to the jury that defendant could be testifying honestly because he was not concealing his prior convictions, thereby removing the potential impeachment value of the evidence from the State. There was no ineffective assistance of counsel.

■ In cross-examining defendant, the prosecutor attempted to clarify that defendant was convicted of two separate convictions in Ohio, identified by different case numbers. In this series of questions, the prosecutor's final question was as follows: "So case number CR— 176497, you were convicted of two felonies, not one felony. Correct?" Defendant objected to this final question on the ground that it was repetitive and the differences were clearly noted on direct examina-

tion, and the trial court sustained the objection. The testimony of defendant on cross-examination was cumulative of his testimony on direct examination. The scope of cross-examination rests in the discretion of the trial court, and this court will not find error absent a clear abuse of discretion resulting in manifest prejudice to defendant. *People v. Heard*, 187 Ill. 2d 36, 80, 718 N.E.2d 58, 82 (1999). The trial court sustained defendant's objection to the repetitive nature of the cross-examination and thereby limited the State's line of inquiry on cross-examination. No abuse of discretion by the trial court with regard to the permitted scope of cross-examination has been demonstrated, and no prejudice to defendant is shown.

■ We next consider whether the State admitted evidence that violated defendant's right to remain silent (U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10; 725 ILCS 5/103—2(a) (West 1994)). On direct examination of City of Decatur Detectives Patrick McElroy and Dennis Harris and the cross-examination of defendant, the State elicited testimony that defendant voluntarily attended two interviews with police on January 2 and 9, 1995; he was asked to return for a third interview on January 11, 1995; defendant failed to show up for the third interview; and all of these incidents occurred prior to defendant's arrest. On cross-examination, defendant further testified that he left Illinois by bus prior to the third interview. He explained that his mother was ill and he wanted to see about her. Although evidence that defendant was on parole at that time was not admitted, defendant did testify that he had no authority from anyone to leave Illinois. In closing argument, the State argued that defendant's flight was evidence of his consciousness of guilt. Defendant asks this court to consider this issue as plain error because the issue now raised on appeal was not raised by objection to the evidence or argument.

Defendant does not contend on appeal that insufficient evidence was presented from which the jury could infer defendant's knowledge of the commission of a crime and that the police suspected he committed it. Here, after two voluntary interviews and being asked to return for a third interview, defendant left the state without telling the authorities or the aunt with whom he was living where he was going. In spite of defendant's explanations to the contrary, the jury could infer that the defendant took flight to avoid arrest. In addition, we decline to find the defendant's conduct in leaving the state amounted to the invocation of his right to remain silent. See *People v. Shaw*, 278 Ill. App. 3d 939, 947-48, 664 N.E.2d 97, 103 (1996) (defendant does not invoke the right to remain silent by feigning an inability to speak). Defendant's right to remain silent was not violated by evidence of defendant's flight to avoid arrest or the prosecutor's argument about that evidence.

■ Defendant next argues that the trial court erred in admitting the DNA testing without a *Frye* hearing. In *People v. Pope*, 284 Ill. App. 3d 695, 701-05, 672 N.E.2d 1321, 1325-28 (1996), this court found that DNA evidence based on the polymerase chain reaction (PCR) method for DNA identification was admissible, rejecting the arguments that DQ-Alpha typing and polymarker typing were not generally acceptable in the scientific community. That case also found admissible the statistical calculations of probabilities of a random match by use of the product rule.

Subsequently, in *People v. Rozo*, 303 Ill. App. 3d 787, 792-93, 708 N.E.2d 1229, 1234-35 (1999), the court determined that, as a result of this court's decision in *Pope*, a *Frye* hearing was not necessary each time the State sought to introduce evidence obtained by these methods. See also *People v. Harris*, 314 Ill. App. 3d 409, 418-19, 731 N.E.2d 928, 935 (2000); *People v. Oliver*, 306 Ill. App. 3d 59, 66, 713 N.E.2d 727, 734 (1999). As the court in *Rozo* also recognized, defendant may attack the actual procedures used and the application of the method by cross-examination. *Rozo*, 303 Ill. App. 3d at 793, 708 N.E.2d at 1234.

Defendant points to an April 26, 1997, preliminary report of Peter D'Eustachio, an associate professor of biochemistry, attached to defendant's motion *in limine*.

Contrary to defendant's argument, the D'Eustachio report does not challenge the scientific reliability and general acceptance of the PCR-based procedure for DNA identification, generally. It only challenges the procedures used by particular laboratories with regard to the subject databases. This is an appropriate subject for cross-examination or defense expert testimony. A similar result pertains with regard to defendant's argument concerning statistical analysis. The trial court did not err in denying defendant's motion for a *Frye* hearing. Moreover, the DNA evidence was presented to place defendant in the trailer with the victim by establishing that he had sex with her. Defendant testified that he was in the trailer after 8 or 9 p.m. on December 31, 1994, and had sex with the victim. Any error in the admission of the DNA evidence would be harmless.

■ The State's witness, Robert Thomas, who was incarcerated with defendant in Vandalia Correctional Center, in a nonresponsive answer to a question by the prosecutor, testified, "he used to tell me about—uh—the time he did long time ago. I don't know how long ago it was; he told me he did 14 years for—." Defendant's motion for mistrial was denied, but defendant's objection was sustained, the testimony was stricken, and the trial court instructed the jury to disregard that answer.

On appeal, defendant does not argue that the trial court committed an abuse of discretion by denying the motion for mistrial. We note that defendant later testified on direct examination to his prior felony convictions. Therefore, in spite of defendant's argument that Thomas' testimony improperly informed the jury of prior criminal activity, defendant suffered no prejudice.

■ Defendant's argument that the prosecutor made derisive comments about defendant's assumed name in closing argument is without merit. On cross-examination, defendant stated that his real name was Bernard Bethel but he went by Paul Williams even though he never legally changed his name. In closing argument, the prosecutor referred to defendant using an assumed name when discussing defendant's credibility as a witness. Evidence of an assumed name is not improper "other crimes" evidence or improper argument.

The questioning in this case was very similar to that in *People v. Berlin*, 75 Ill. 2d 266, 267, 388 N.E.2d 412, 413 (1979). Because the questions of defendant in this case were similar to those in *Berlin*, we apply the rationale in that case and find the cross-examination proper.

With respect to the prosecutor's argument concerning defendant's assumed name, the prosecutor did not employ the evidence to imply that defendant used it to evade police or as evidence of other crimes. Instead, the prosecutor used it as one factor to be considered by the jury in assessing defendant's credibility. In light of the evidence of defendant's own testimony that he had been convicted of three prior felonies, the possibility that the evidence of the assumed name could be used by the jury to infer that defendant had committed crimes other than the one for which he was being tried could not have resulted in substantial prejudice to defendant.

■ Defendant next argues that he was not proved guilty beyond a reasonable doubt. When the sufficiency of the evidence in a criminal case is challenged on appeal, the test is whether, after viewing all the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Oaks*, 169 Ill. 2d 409, 457-58, 662 N.E.2d 1328, 1349-50 (1996).

Defendant's argument is that proof of the *corpus delicti* in this case was from his admissions to fellow inmates, Robert Thomas and Larry Simmons, and those admissions were not sufficiently corroborated by independent evidence to establish *corpus delicti*. We disagree.

Proof of an offense requires proof of (1) the fact that an offense occurred (*corpus delicti*) and (2) that defendant committed that crime. *People v. Clothier*, 156 Ill. 2d 483, 503, 622 N.E.2d 774, 784 (1993).

"The corpus delicti in a criminal homicide consists of the fact of death caused by the criminal agency." *People v. Bracken*, 72 Ill. App. 3d 178, 180, 390 N.E.2d 626, 628 (1979). The evidence may consist of circumstantial evidence, need not establish the crime beyond a reasonable doubt, and need not correspond to the confession in every detail as long as it tends to confirm and strengthen the confession. *People v. Hill*, 294 Ill. App. 3d 962, 972, 691 N.E.2d 797, 804-05 (1998).

In this case, *corpus delicti* was established without reference to any confession by defendant. Substantial evidence showed that the victim, Barbara Matthews, whose body was found January 2, 1995, was murdered by someone. The only real issue was whether defendant was that someone. Defendant argues that the evidence used to identify him as the murderer was inconsistent and contradictory. However, when viewed in the light most favorable to the prosecution, the evidence is sufficient to prove defendant guilty beyond a reasonable doubt.

Defendant and Matthews had been living in the home of Elatrice Lenox, defendant's aunt. Defendant admitted being in the trailer with his girlfriend on the evening of December 31, 1994. He admitted having sex with Matthews on that occasion, and the DNA test results from the swab taken from Matthews' vagina corroborated that defendant had sex with the victim. In addition, defendant's fingerprint was found on a Budweiser beer can in the trailer. Nevertheless, when initially interviewed by police, defendant denied having sex with Matthews and said he had not been at the trailer for a couple of weeks. In the second voluntary interview with police officers, police confronted defendant with the fact that his fingerprint was found on the beer can. Defendant told police he bought a six-pack of beer for Matthews. After the second interview, and in spite of being requested to return for a third interview, defendant left Illinois without seeking authority to do so and without telling his Aunt Elatrice where he was going. From that evidence of flight and concealment, the trier of fact could infer consciousness of guilt on the part of defendant. Also, Simmons and Thomas testified that defendant admitted strangling a woman named "Crickett" at a trailer after having sex with her. In addition, defendant's former girlfriend, Lula Rogers, corroborated defendant's testimony that she accompanied defendant to the trailer on Saturday, December 31, 1995. She, defendant, and Matthews were drinking. Rogers went to lie down in the back bedroom. Defendant later awakened her and took her home. At home, she went to sleep but woke suddenly with a feeling that something was wrong. She got a ride back to the trailer, and defendant answered the door. Defendant told her, "you just walked into a mother-fucking murder." When she

started hollering, he told her to shut up, put a knife to her side, got her back into the car, and took her home. Rogers admitted she originally lied to the police because she was scared.

The jury, as trier of fact, determines the credibility of the witnesses. *Williams*, 193 Ill. 2d at 25, 737 N.E.2d at 244. The resolution of defendant's guilt or innocence depends on the credibility of witnesses, the weight to be accorded their testimony, and drawing inferences from the evidence; and this court will not substitute its judgment for that of the trier of fact on these matters. *People v. McDonald*, 168 Ill. 2d 420, 448-49, 660 N.E.2d 832, 844 (1995). The evidence in this case is clearly sufficient to establish defendant's guilt of first degree murder beyond a reasonable doubt.

 The remaining issues concern defendant's sentence. Defendant argues that the sentencing judge's statements demonstrated that he misunderstood the record. In making this argument, defendant relies on statements by the judge made at the time of denying the motion to reconsider the sentence, rather than statements made at the time of sentencing. In denying the motion to reconsider the sentence, the trial judge indicated his awareness of the evidence offered in mitigation but found little or superficial evidence that defendant was a productive member of society, active in his church, and had a supportive family. The trial judge stated he had considered the statutory factors in mitigation and aggravation and found the sentence imposed was fair, reasonable, and appropriate.

At the time of sentencing, the trial court was fully aware of the evidence presented. When determining the propriety of a sentence, a reviewing court does not focus on a few words or statements of the sentencing court but considers the entire record as a whole. *People v. Ward*, 113 Ill. 2d 516, 526-27, 499 N.E.2d 422, 425-26 (1986). There was no error.

The final issue is whether defendant's sentence was excessive. Defendant argues that the trial court did not give sufficient weight to the mitigating evidence and his rehabilitative potential.

The trial court's sentencing decision is entitled to great deference and weight. The sentencing judge is in a much better position than is this court to fashion an appropriate sentence. The standard of review is whether the trial court has committed an abuse of discretion. This court will not substitute its judgment for that of the sentencing court merely because we might have weighed the factors differently. *People v. Streit*, 142 Ill. 2d 13, 18-19, 566 N.E.2d 1351, 1353 (1991).

Mitigating evidence was presented to the trial court, and we presume that the trial court considered it. However, the existence of mitigating factors does not obligate the trial court to reduce a sentence

from the maximum allowable. *People v. Payne*, 294 Ill. App. 3d 254, 260, 689 N.E.2d 631, 635 (1998). Defendant does not contend on appeal that the natural life imprisonment exceeds the trial court's statutory sentencing authority.

Here, defendant's prior criminal history demonstrated that defendant had little if any rehabilitative potential. In addition, the trial court's finding that the public needed to be protected from defendant was supported by the evidence. No abuse of sentencing discretion has been demonstrated.

In his petition for rehearing, defendant argues for the first time on appeal that his sentence to natural life imprisonment was improper in light of the United States Supreme Court's recent decision in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). This court ordered the State to respond to the petition for rehearing and allowed defendant to reply to the State's response. 155 Ill. 2d R. 367(d). We disagree with defendant's argument and continue to affirm.

In *Apprendi*, the Court held that the fifth and fourteenth amendments to the United States Constitution (U.S. Const., amends. V, XIV) require that, while a sentencing court has the discretion to sentence a defendant within the statutory range, the sentencing court may not enhance or increase the sentence based on findings of fact on a preponderance of the evidence offered at the sentencing hearing, with the exception of a prior conviction, and such enhancement is only authorized if the facts used to enhance or increase the sentence are submitted to the trier of fact and found by the trier of fact to be proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 481-90, 147 L. Ed. 2d at 449-55, 120 S. Ct. at 2358-63.

In the case at bar, the State charged defendant with four counts of first degree murder. The felony murder count alleged that defendant committed the murder in the course of a criminal sexual assault. The jury found defendant guilty of first degree murder and further found defendant eligible for the death penalty on the ground that the murder was committed during the commission of an aggravated criminal sexual assault. Although the jury did not impose the death penalty, the trial court sentenced defendant to natural life imprisonment based on the aggravating factor that the murder was committed during the commission of the aggravated criminal sexual assault.

Section 5—8—1(a)(1) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5—8—1(a)(1) (West 1994)) provides in relevant part:

> "Except as otherwise provided in the statute defining the offense, a sentence of imprisonment for a felony shall be a determi-

nate sentence set by the court under this Section, according to the following limitations:

(1) for first degree murder,

(a) a term shall be not less than 20 years and not more than 60 years, or

(b) if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or, except as set forth in subsection (a)(1)(c) of this Section, that any of the aggravating factors listed in subsection (b) of Section 9—1 of the Criminal Code of 1961 are present, the court may sentence the defendant to a term of natural life imprisonment[.]''

Defendant challenges these provisions in section 5—8—1(a)(1) of the Unified Code as violating the rule announced in *Apprendi*. That argument ignores the procedural history of the case. This is not a case in which the State did not seek the death penalty or the jury found defendant not eligible for the death penalty.

Section 9—1(b) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/9—1(b) (West 1994)) provides that a death sentence may be imposed if one of the aggravating factors is found. The aggravating statutory factor found by the jury to exist in this case is set forth in section 9—1(b)(6)(c) of the Criminal Code (720 ILCS 5/9—1(b)(6)(c) (West 1994)), *i.e.*, the victim was killed by defendant in the course of an aggravated criminal sexual assault. In a death sentence proceeding, the State has the burden of proving the aggravated factor beyond a reasonable doubt. 720 ILCS 5/9—1(f) (West 1994). Section 9—1(g) of the Criminal Code sets forth the procedure to be employed when a jury considers the propriety of imposing a death sentence as follows:

"If at the separate sentencing proceeding the jury finds that none of the factors set forth in subsection (b) exists, the court shall sentence the defendant to a term of imprisonment under Chapter V of the Unified Code of Corrections. If there is a unanimous finding by the jury that one or more of the factors set forth in subsection (b) exist, the jury shall consider aggravating and mitigating factors as instructed by the court and shall determine whether the sentence of death shall be imposed. If the jury determines unanimously that there are no mitigating factors sufficient to preclude the imposition of the death sentence, the court shall sentence the defendant to death.

Unless the jury unanimously finds that there are no mitigating factors sufficient to preclude the imposition of the death sentence the court shall sentence the defendant to a term of imprisonment under Chapter V of the Unified Code of Corrections.'' 720 ILCS 5/9—1(g) (West 1994).

Here, the jury unanimously found that the State proved beyond a reasonable doubt the existence of the aggravating factor that the sentencing court relied on to impose natural life imprisonment. This case does not present a violation of the rule announced in *Apprendi*. Moreover, the Supreme Court excluded capital punishment sentencing schemes from the *Apprendi* analysis as follows:

> "Finally, this Court has previously considered and rejected the argument that the principles guiding our decision today render invalid state capital sentencing schemes requiring judges, after a jury verdict holding a defendant guilty of a capital crime, to find specific aggravating factors before imposing a sentence of death. *Walton v. Arizona*, 497 U.S. 639, 647-649[, 111 L. Ed. 2d 511, 110 S. Ct. 3047] (1990); [497 U.S.] at 709-714, (Stevens, J., dissenting). For reasons we have explained, the capital cases are not controlling:
>
>> ' "Neither the cases cited, nor any other case, permits a judge to determine the existence of a factor which makes a crime a capital offense. What the cited cases hold is that, once a jury has found the defendant guilty of all the elements of an offense which carries as its maximum penalty the sentence of death, it may be left to the judge to decide whether that maximum penalty, rather than a lesser one, ought to be imposed .... The person who is charged with actions that expose him to the death penalty has an absolute entitlement to jury trial on all the elements of the charge." *Almendarez-Torres*, 523 U.S., at 257, n. 2 (Scalia, J., dissenting) (emphasis deleted).'
>
> See also *Jones*, 526 U.S., at 250-251; *post*, at 25-26 (Thomas, J., concurring)." *Apprendi*, 530 U.S. at 496-97, 147 L. Ed. 2d at 459, 120 S. Ct. at 2366.

We affirm the judgment of the circuit court of Macon County.

Affirmed.

COOK and MYERSCOUGH, JJ., concur.